UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARTEN TRANSPORT, LTD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-02464-JWL-TJJ |
| | ) | |
| PLATTFORM ADVERTISING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff brings this action under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, for

trademark infringement and unfair competition. This matter is before the Court on Defendant's

Motion for Spoliation Sanctions (ECF No. 85). Pursuant to Fed. R. Civ. P. 37(e), Defendant

requests an order sanctioning Plaintiff for failing to preserve the computer internet history of one

of Plaintiff's employees, who Defendant alleges posted some of the infringing job listings that

Plaintiff accuses Defendant of posting. After the motion was fully briefed, the Court held a

telephone conference and motion hearing on January 13, 2015, at which it took the motion under

advisement, granted Defendant leave to take one additional deposition,[1] and ordered Plaintiff to

file an affidavit stating its efforts to locate the computer at issue and whether it otherwise had the

capability to log the internet history of its employees.

The Court has reviewed all of the briefing and considered the arguments of counsel at the

hearing on the instant motion, as well as the Declarations submitted by Plaintiff in accordance

---

[1] Specifically, Defendant was granted leave to take the deposition of ACS Advertising, a third-party advertising agency that assisted Plaintiff with its job postings. Nothing in Rule 37(e) "limits the court's powers under Rules 16 and 26 to authorize additional discovery." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

with the Court's instructions following the hearing.[2]  The narrow issue before the court is whether Plaintiff should be sanctioned for failing to preserve the internet history of one of its employees who is a key player in this litigation.  For the reasons discussed more fully below, Defendant's Motion for Spoliation Sanctions is denied based upon the Court's findings that, although Plaintiff had a duty to preserve relevant ESI as of Fall 2013, that duty to preserve did not extend to the internet history of Plaintiff's employee Jolene Vinck until June 2015, and by then the internet history was lost.

## I.      Relevant Background

### A.      Nature of the Case

Defendant operates trucking websites that advertise open driver positions on behalf of commercial trucking companies and permit individuals interested in obtaining those positions to complete and submit job applications. These websites also allow the commercial trucking companies to post job listings for their open truck driving positions.  Defendant currently owns and operates the following trucking websites: FindATruckingJob.com, JustTruckingJobs.com, EliteTruckDrivingJobs.com and TruckDrivingJobFinder.com.  Plaintiff contracted with and paid Defendant to advertise commercial truck driving positions on FindATruckingJob.com ("FaTJ") and JustTruckingJobs.com (jointly, the "Trucking Websites").  Per this agreement, Defendant was authorized to use Plaintiff's trademarks and identifying information. However, Plaintiff accuses Defendant of continuing to make job postings using Plaintiff's trademarks and information without its authorization, after Plaintiff terminated its agreement with Defendant.

On September 13, 2013, Plaintiff's attorneys sent a cease and desist letter to Defendant accusing it of improperly using Plaintiff's trademarks and identifying information on

---

[2] ECF Nos. 110 and 111.

Defendant's Trucking Websites and Craigslist, and demanding that Defendant stop listing Plaintiff's job postings. On September 30, 2013, Defendant's general counsel e-mailed a response to Plaintiff's attorneys advising that, on September 17, 2013, Defendant had removed Plaintiff's job postings from its Trucking Websites and Craigslist. On October 28, 2013, Plaintiff's attorneys faxed a follow-up letter to Defendant's general counsel again threatening litigation.

On December 5, 2013, Defendant's website marketing manager, Joel Mackey, noticed that someone was logging into the FaTJ website's customer access portal system using the unique user ID and password assigned to Plaintiff and posting Plaintiff's truck driving positions. That day, Mackey redirected the delivery of job applications resulting from such postings to his own email address, turned off the postings so that they could not be viewed externally, and disabled Plaintiff's ability to log-in. As early as December 2013, Defendant suspected Plaintiff had logged in and created the job postings, but Defendant was unable to verify its suspicions because it could not identify the internet protocol ("IP") address of the individual who logged in and created the job postings using Plaintiff's account.

Plaintiff filed this lawsuit on September 15, 2014, claiming that Defendant improperly used Plaintiff's intellectual property without authorization by making postings on the Trucking Websites and Craigslist.[3] Plaintiff alleges that Defendant posted Plaintiff's marks on an extensive basis and collected thousands of driving applications using that intellectual property, but intentionally failed to forward any candidate applications to Plaintiff.

---

[3] Plaintiff and Defendant disagree regarding the total number of alleged unauthorized job postings at issue on the Trucking Websites and Craigslist. However, according to the Joint Report Regarding the Total Number Of Allegedly Infringing Job Postings filed by the parties (ECF No. 114), there are at least 118 such postings. Of those, only the six postings to the FaTJ website specifically identified by dates posted, *supra*, are the subject of the instant spoliation motion.

On January 30, 2015, Plaintiff served its Rule 26 disclosures identifying one of its employees, recruiter Jolene Vinck ("Vinck"), as an individual "believed to have discoverable information relating to the matter."[4]  Specifically, Plaintiff indicated that Vinck has or may have knowledge relating to:  Plaintiff's commercial driver recruiting needs and processes; Plaintiff's use of internet advertising to satisfy its commercial driver recruiting needs; Plaintiff's previous business relationship with Defendant; Defendant's advertising of commercial driver positions that purportedly related to Plaintiff; and Defendant's unauthorized use of Plaintiff's identifying information.

On June 16, 2015, Defendant's counsel sent a letter to Plaintiff alleging that after Defendant removed all of Plaintiff's job postings from the FaTJ website on September 17, 2013, Plaintiff logged back in and created six job postings on five separate dates: September 23, 2013, October 21, 2013, November 7, 2013, November 26, 2013, and December 2, 2013.[5]  Defendant further alleged that it had caught Plaintiff logging into the system on December 5, 2013, and deactivated the two job postings Plaintiff created on December 2, 2013.

On September 11, 2015, Plaintiff served its supplemental responses to Defendant's First Request for Production. The supplemental production contained a December 12, 2013 e-mail from Meagan Clark, an account manager with ACS Advertising (a third party which assists Plaintiff with its job postings) to Vinck, advising her that Plaintiff had discontinued its relationship with FaTJ. In response, Vinck emailed back: "OK, Thanks! I didn't know this and had been posting on there all along! They must have just figured it out! lol[.]"[6]

---

[4] Pl.'s Rule 26 Initial Discls., ECF No. 86-9.

[5] June 16, 2015 letter from Def.'s counsel, ECF No. 86-10.

[6] Dec. 12, 2013 Vinck email, ECF No. 86-3.

In its October 14, 2015 Responses to Defendant's Second Request for Production Nos. 35 and 36, Plaintiff advised Defendant that Vinck's internet history was no longer available as Vinck received a new work station in February 2015 in the ordinary course of business, and Plaintiff did not have access to any web browsing history relating to any computer assigned to her prior to February 2015.[7] Plaintiff later submitted with its Response to the instant motion the Declaration of its Director of Recruiting, Timothy Norlin, who stated that Vinck had been relocated to a new work station "in or about the first week of April 2014."[8] He also stated that, consistent with company practice, Plaintiff assigned Vinck to a new desktop computer at that time ("Computer 2"), leaving the computer she had been using during the period between September 2013 and December 2013 ("Computer 1") at her former work station.[9]

After attempting to confer, Defendant filed this motion seeking spoliation sanctions due to Plaintiff's failure to preserve Vinck's internet history on Computer 1.

## B. Nature of Alleged Spoliation

Relying upon the December 2013 Vinck email, Defendant claims Vinck posted some of the job listings that Plaintiff accuses Defendant of posting on the FaTJ website in Fall 2013. Defendant has requested the internet history from Vinck's computer for Fall 2013, which it believes will prove Vinck did in fact access the FaTJ website on the days the job listings at issue were posted. Defendant contends that Plaintiff should have preserved this information and the

---

[7] Pl.'s Resp. to Def.'s Second Req. for Produc., ECF No. 86-8.

[8] Norlin Decl. ¶ 13, ECF No. 90-1.

[9] Initially, the Court was concerned by Plaintiff's loss or destruction of Computer 2, which occurred relatively soon after Plaintiff's Initial Disclosures were served. However, Plaintiff's counsel candidly informed the Court during hearing on the instant motion that the Fall 2013 internet history at issue in the motion would not have resided on Computer 2. Therefore, Computer 2 is not at issue or pertinent to the instant motion.

failure to do so should result in an adverse jury instruction or dismissal of Plaintiff's causes of action as they relate to the FaTJ website.

Plaintiff responds that it preserved relevant information possessed by Vinck in Fall 2013, but did not preserve the internet history on Vinck's computers because it did not know or have reason to know that the internet history would be relevant in this case at that time. Plaintiff claims it first learned about Defendant's allegation that Vinck made the Fall 2013 job postings on the FaTJ website in June 2015, when Plaintiff received the June 16, 2015 letter from Defendant's counsel raising the issue. At that time, Plaintiff no longer had access to Vinck's internet history because, in April 2014, Vinck had been relocated to a new workstation and assigned a different computer. Plaintiff does not track information regarding the specific personnel assigned to its computers, and consequently, it has been unable to locate the computer that was being used by Vinck in Fall 2013. Plaintiff argues that it should not be sanctioned for failing to preserve the internet history of Computer 1 (the computer Vinck used in Fall 2013) because, prior to June 2015, it did not know and could not have reasonably known this information would be relevant to this case.

## II. Duty to Preserve ESI

As the alleged spoliation is due to Plaintiff's failure to preserve internet history, the Court looks to recently amended Federal Rule of Civil Procedure 37(e), which addresses the failure of a party to preserve electronically stored information ("ESI").[10] Rule 37(e) provides specific, limited remedies if the Court determines ESI "that should have been preserved in the anticipation

---

[10] The Court recognizes that Defendant's motion was filed on November 30, 2015, the day before amended Rule 37(e) took effect on December 1, 2015. Under 28 U.S.C. § 2074(a) and the Supreme Court orders dated April 29, 2015, the amendments govern all proceedings commenced on or after December 1, 2015, and all proceedings then pending "insofar as just and practicable." Neither party contends it would be unjust or impracticable to apply the amended Rule. In this pending matter, the Court therefore applies the recently amended Federal Rules of Civil Procedure.

or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Those remedies include:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>> (C) dismiss the action or enter a default judgment.[11]

The advisory committee's notes to the 2015 amendments clarify that Rule 37(e) "applies only if the lost information should have been preserved in the anticipation or conduct of litigation and the party failed to take reasonable steps to preserve it."[12] The notes further offer the following guidance in applying Rule 37(e):

> [A] court may need to decide *whether* and *when* a duty to preserve arose. Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant.
>
> …
>
> The rule applies only if the information was lost because the party failed to take reasonable steps to preserve the information. Due to the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant electronically stored information is often impossible. As under the current rule, the routine, good-faith operation of an electronic information system would be a relevant factor for the court to consider in evaluating whether a party failed to take reasonable steps to preserve lost information, although the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation. This rule recognizes that "reasonable steps" to preserve suffice; it does not call for perfection. The court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts; some

---

[11] Fed. R. Civ. P. 37(e).

[12] Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

litigants, particularly individual litigants, may be less familiar with preservation obligations than others who have considerable experience in litigation.[13]

Although the 2015 amendments significantly changed Rule 37(e), the amended Rule 37(e) does not alter existing federal law concerning when the duty to preserve attaches.[14] The advisory committee's notes are illustrative of this point, stating "Rule 37(e) is based on th[e] common-law duty; it does not attempt to create a new duty to preserve. The rule does not apply when information is lost before a duty to preserve attaches."[15] Thus, case law in existence prior to the newly amended Rule 37(e), regarding when the duty to preserve attaches, still controls.

"A litigant has a duty to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation,"[16] and this duty to preserve evidence extends to electronically stored information.[17] The "routine, good faith operation of an electronic information system [is] a relevant factor for the court to consider in evaluating whether a party failed to take reasonable steps to preserve lost information, although the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation."[18] Identifying the

---

[13] *Id.* (emphasis added).

[14] *See* Judicial Conf. Comm. on Rules of Practice & Procedure, Report of the Judicial Conf. Comm. on Rules of Practice and Procedure 15, (Sept. 2014), available at http://www.uscourts.gov/rules-policies/archives/committee-reports/reports-judicial-conference-september-2014, archived at http://perma.cc/S4YH-RF9T.

[15] *See id.*; Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

[16] *Workman v. AB Electrolux Corp.*, No. 03-4195, 2005 WL 1896246, at *5, 2005 WL 1896246, at *5 (D. Kan. Aug. 8, 2005) (citing *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912 (Table), 1998 WL 68879, at *5 (10th Cir. Feb. 20, 1998)).

[17] *Linnebur v. United Tel. Ass'n, Inc.*, No. 10-1379-RDR, 2012 WL 2370110, at *2 (D. Kan. June 21, 2012); *In re Krause*, 367 B.R. 740, 764 (Bankr. D. Kan. 2007).

[18] Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

boundaries of the duty to preserve involves two related inquiries: (1) the timing of when the duty to preserve arises, and (2) what evidence must be preserved.[19]

With respect to timing, the duty to preserve definitely exists upon the filing of a lawsuit, but the duty may arise even before a lawsuit is filed if a party has notice that future litigation is likely.[20] Notice invoking a duty to preserve may be triggered by different events, but most commonly, a party is deemed to have such notice if the party has received a discovery request, a complaint has been filed, "or any time a party receives notification that litigation is likely to be commenced."[21] Once a party has notice, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant evidence.[22]

The determination of what particular evidence must be preserved is more difficult. Generally, the scope of the evidence to be preserved is what a litigant "knows or should know is relevant to imminent or ongoing litigation."[23] A litigant's preservation may not be "selective," saving only the evidence supporting a theory of liability and impeding the examination of another theory.[24] Cases from the District of Kansas have extended the duty to preserve to

---

[19] *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

[20] *Helget v. City of Hays*, No. 13-2228-KHV-KGG, 2014 WL 1308893, at *3 (D. Kan. Mar. 31, 2014).

[21] *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2013 WL 4028759, at *2 (D. Kan. Aug. 7, 2013).

[22] *Linnebur*, 2012 WL 2370110, at *1.

[23] *Workman*, 2005 WL 1896246, at *5.

[24] *Id*. at *6.

individuals likely to have relevant information, i.e., the "key players" in the litigation.[25]  Other cases have summarized the duty to preserve as follows:  "While a litigant has no duty to keep or retain every document in its possession, it does have a duty to preserve 'what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.'"[26]

## III.    The Internet History on Computer 1 is Lost

Rule 37(e) only applies when ESI is lost before a duty to preserve attaches. Further, "Rule 37(e) directs that the initial focus should be on whether the lost information can be restored or replaced through additional discovery."[27]  Thus, the Court's initial inquiry is whether Vinck's Fall 2013 internet history is lost.

Plaintiff's discovery responses and briefing indicate that it did not preserve and is unable to provide the internet history sought by Defendant and for which Defendant seeks spoliation sanctions.  As directed by the Court during the hearing on the subject motion, Plaintiff subsequently filed Declarations regarding the efforts it made to search for and locate Computer 1 and regarding whether Plaintiff otherwise had the capability to log Vinck's internet history. Based upon the Court's review of the briefing and Plaintiff's Declarations, the Court is satisfied that Plaintiff has made thorough and reasonable good faith efforts to locate Computer 1, but it cannot be located.

---

[25] *School-Link Technologies, Inc. v. Applied Res., Inc.*, No. 05-2088-JWL, 2007 WL 677647, at *3 (D. Kan. Feb. 28, 2007).

[26] *Benton v. Dlorah, Inc.*, No. 06-2488-KHV, 2007 WL 3231431, at *4 (D. Kan. Oct. 30, 2007) (quoting *Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984)). *See also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

[27] Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

The Court further concludes that the internet history on Computer 1 is lost and cannot be restored or retrieved by other means. Plaintiff's Vice President of Information Systems, Randy Baier, states in his Declaration that Plaintiff's general practice is to assign its desktop computers to specific work stations and to cycle each of its computers out of use every five years.[28] Generally, after a computer has been in use five years, Plaintiff will wipe all data off the hard drive and send the computer to a recycling company or donate it to a charitable organization. Baier further states that Plaintiff has a system that records web browsing history, but it only maintains the data for 90 days.[29] Hence, Vinck's Fall 2013 internet history is lost and cannot be restored or retrieved because, pursuant to Plaintiff's practices, it would not have been maintained after February or March 2014.

## IV.    Plaintiff Had a Duty to Preserve Relevant Evidence As of Fall 2013

Having determined that the internet history of Computer 1 is lost and cannot be restored or retrieved, the Court must next determine whether Plaintiff had a duty to preserve Vinck's internet history, and, if so, when such duty arose. Plaintiff does not dispute that it had a duty to preserve all relevant information, including ESI, beginning in Fall 2013. Plaintiff claims it preserved all such information, includingVinck's email communications and attachments, her Outlook calendar, and all electronic and physical files in her possession, custody or control concerning Defendant or any of its websites and/or any applicants for commercial driving positions with Plaintiff. Defendant argues that Plaintiff also had a duty to preserve Vinck's internet history and breached its duty insofar as it is unable to locate the computer Vinck was using in Fall 2013 (Computer 1) or otherwise provide her internet history for that time period.

---

[28] Baier Decl. ¶ 5, ECF No. 110.

[29] Baier Decl. ¶ 15.

To determine when Plaintiff's duty to preserve arose, the Court looks to the events leading up to the filing of this lawsuit. Plaintiff sent a cease and desist letter to Defendant dated September 13, 2013, indicating it was considering legal options and expressly "not" waiving its rights to commence litigation. Defendant's general counsel sent an email response on September 30, 2013, acknowledging that Defendant had posted information pertaining to Plaintiff on three websites and that the postings were removed September 17, 2013. Plaintiff sent a follow up letter dated October 28, 2013, threatening to pursue numerous civil claims against Defendant. About a year later, in September of 2014, Plaintiff filed this trademark infringement action.

Based upon these facts, Plaintiff's duty to preserve relevant evidence began at the time of the above correspondence between counsel for Plaintiff and Defendant (hereinafter referred to as "Fall 2013").[30] Legal counsel for both parties were involved at that time, and Plaintiff had threatened to pursue infringement claims against Defendant. Litigation was thus reasonably foreseeable at that time and it was clear from the nature of the threatened claims (infringement due to postings on websites) that ESI would likely be relevant in any litigation that might result. Accordingly, the Court finds that Plaintiff's duty to preserve relevant information, including ESI, arose in Fall 2013.

## V. Plaintiff's Duty to Preserve Did Not Extend to Vinck's Internet History Until June 2015

The Court's inquiry does not stop with the finding that Plaintiff had a duty to preserve relevant information, and that duty commenced in Fall 2013. The Court must next determine the scope of that duty to preserve, including whether and, if so, when the duty extended to Vinck's

---

[30]For purposes of the instant motion, the Court need not determine a more exact date in Fall 2013 when Plaintiff's duty to preserve arose.

Fall 2013 internet history. The Court finds the following guidance from the Rule 37(e) Avisory

Committee's Notes to the 2015 amendment instructive:

> A variety of events may alert a party to the prospect of litigation. Often these events provide only limited information about that prospective litigation, however, so that the scope of information that should be preserved may remain uncertain. It is important not to be blinded to this reality by hindsight arising from familiarity with an action as it is actually filed.[31]

Plaintiff argues the central issues in this case involve Defendant's alleged actions and

alleged unauthorized use of Plaintiff's trademarks and information. It argues that Defendant has

not asserted any counterclaims alleging that Plaintiff improperly accessed Defendant's websites

and, until June 2015, did not raise any defenses that Plaintiff itself was responsible for any of the

disputed postings on Defendant's websites.

Prior to receiving the June 16, 2015 letter from Defendant's counsel, Plaintiff contends it

had no reason to believe the internet history on Computer 1 (used by Vinck in Fall 2013) would

be relevant to any issues in this case, and thus it had no duty to preserve the internet history.  It is

undisputed that Defendant did not advise Plaintiff that Defendant believed Vinck made the

disputed FaTJ postings until the June 16, 2015 letter.  Plaintiff contends that prior to that time it

had no reason to believe that any of its employees, including Vinck, made any postings on the

FaTJ website.  Plaintiff attaches the Declaration of Timothy Norlin, who has been actively

involved in Plaintiff's litigation matters and is very familiar with Plaintiff's obligation to

preserve evidence relevant to litigation, in support of this contention.[32]  Norlin also indicates that

Plaintiff's decision not to preserve the internet history was based in large part because it had

never been asked for internet search history in connection to any previous litigation. Norlin

---

[31] Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

[32] Norlin Decl. ¶ 9, ECF No. 90-1 (stating his understanding was that no employee of Plaintiff, including Vinck, "had ever logged onto and/or posted any information directly on FaTJ at any time.").

therefore "did not believe that the web history files of any [of Plaintiff's] employee[s] bore any relationship to this matter."[33]

Plaintiff also relies upon a Declaration from its computer forensics expert, Ronald Fischer, who states it was "his experience that businesses do not take any additional steps to save, backup or maintain Internet history files. Consequently, Internet history is typically lost when a computer stops working and/or is replaced."[34] Plaintiff points out the deposition testimony of Defendant's Director of Information Technology, Brian Turrel, indicates that, like Plaintiff, Defendant does not retain its computer's internet history when Defendant replaces its computers.[35]

Finally, Plaintiff argues even if it had preserved Vinck's Fall 2013 internet history, it would not provide the evidence that Defendant is seeking to obtain. That is, according to Plaintiff, Vinck's internet history would show only the websites she accessed, not whether she actually logged into those websites and posted the disputed job listings on the FaTJ website. Defendant counters that if Vinck's internet history reflected that she had accessed the websites on the days the disputed listings were posted, it would be very strong circumstantial evidence that Vinck made the postings. The Court agrees with Defendant on this point. The internet history would not be conclusive evidence. However, if it revealed that Vinck accessed the FaTJ website on the same days as the disputed FaTJ job postings, that—along with the December 2013 email—would be strong circumstantial evidence that Vinck posted the job listings.

---

[33] Pl.'s Mem. in Opp., ECF No. 90 at 11.

[34] Fischer Decl. ¶ 4, ECF No. 90-2.

[35] Turrel Dep., attached to Van Camp Decl., Ex. G to ECF No. 90-4.

Defendant argues there is no doubt that when Plaintiff lost or destroyed Vinck's Fall 2013 internet history Plaintiff was under a duty to preserve the information. In support, it cites the demand letter that Defendant sent to Plaintiff on September 13, 2013. Defendant also points out the filing of this lawsuit on September 15, 2014; and Plaintiff's identification of Vinck in Plaintiff's Rule 26(a) initial disclosures, served on January 30, 2015, indicating Vinck was a key player in the case.[36]

As noted above, a duty to preserve relevant ESI arose in Fall 2013. In its September 30, 2013 email response to Plaintiff's cease and desist letter, however, Defendant acknowledged it had posted information pertaining to Plaintiff on the three websites at issue and that the postings were not removed until September 17, 2013. Given Defendant's response admitting that **it** made postings pertaining to Plaintiff on the websites, Plaintiff had no reason to question at that time whether one of its own employees had made or might make future job postings, or to foresee that Vinck's Fall 2013 internet history would become relevant. At the time of this correspondence in Fall 2013, the case appeared to involve only Defendant's alleged actions and alleged unauthorized use of Plaintiff's trademarks, and there were no allegations that Plaintiff improperly accessed Defendant's websites. Plaintiff therefore had no duty to preserve Vinck's internet history in Fall 2013.

The next event upon which Defendant bases its argument that Plaintiff had a duty to preserve Vinck's internet history is the filing of the Complaint on September 15, 2014. The Court has already concluded that the Fall 2013 correspondence did not create a duty for Plaintiff to preserve Vinck's Fall 2013 internet history. Defendant cites nothing in the interim (between delivery of the demand letter and filing of the Complaint) to support its contention that Plaintiff

---

[36] Def.'s Mem. in Supp. of Mot. for Spoliation Sanctions, ECF No. 86, at 8.

had a duty to preserve Vinck's internet history when she moved to a new work station and left behind Computer 1 in April 2014. The subsequent filing of the Complaint could not have invoked a duty to preserve internet history upon Plaintiff in April 2014. The same is true of Plaintiff's subsequently served initial disclosures, on January 30, 2015. Moreover, even the Answer[37] that Defendant filed on February 10, 2015 did not assert that Plaintiff made any of the job postings that are the basis for Plaintiff's infringement claims or otherwise created a duty for Plaintiff to preserve the Fall 2013 internet history of any of its employees (including Vinck).

Defendant does, however, argue that Plaintiff, in doing due diligence for this case, should have been aware of the December 12, 2013 email in which Vinck indicated she did not know the FaTJ website was cancelled and "had been posting on there all along!" Defendant relies heavily upon this Vinck email. But again, as of April 2014, Defendant had made no allegations that Plaintiff had improperly accessed Defendant's websites. Indeed, as noted previously, Defendant's September 30, 2013 response to Plaintiff's demand letter acknowledged that Defendant had made postings to the Trucking Websites and Craigslist.[38] Furthermore, Norlin on behalf of Plaintiff states he believed in April 2014 that no employees of Plaintiff, including Vinck, had ever logged onto and/or posted any information directly on FaTJ at any time, rather a representative of ACS Advertising would have posted the information for Plaintiff on FaTJ.[39] Thus, even though Vinck was identified in initial disclosures served January 30, 2015 as a person with knowledge of facts relevant to this case and she may be a key witness in this case, there is

---

[37] The Answer does not assert an affirmative defense or otherwise allege that Plaintiff made any of the job postings that are the basis for Plaintiff's claims against Defendant.

[38] Indeed, even now, of the at least 118 job listings to the FaTJ website, Defendant claims only six were posted by Plaintiff.

[39] Norlin Decl. ¶ 9, ECF No. 90-1.

no evidence that Plaintiff was aware of Vinck's December 13, 2013 e-mail or that Plaintiff should have anticipated Defendant's subsequent argument that Vinck made the six disputed FaTJ postings in April 2014.

When Vinck moved to a new work station with a new desktop computer in April 2014, she left behind Computer 1. Norlin's Declaration indicates this was consistent with Plaintiff's company practice. The advisory committee's notes to Rule 37(e) instruct the Court to take into consideration the routine, good-faith operation of an electronic information system as a relevant factor in evaluating whether a party failed to take reasonable steps to preserve lost information.[40] In this case, Plaintiff's general practice is to assign its desktop computer to specific work stations and to cycle each of its computers out of use every five years.[41] Generally, after a computer has been in use five years, Plaintiff will wipe all data off the hard drive and send the computer to a recycling company or donate them. Thus, the loss of Vinck's internet history on Computer 1 was due to her assignment to a new workstation with a new desktop computer in April 2014 and the recycling of her old computer, which are both consistent with Plaintiff's company practices.

In his Declaration, Plaintiff's computer forensics expert, Ronald Fischer, opines that in his experience businesses do not take any additional steps to save, backup or maintain Internet history files and internet history is typically lost when a computer stops working and/or is replaced."[42] Defendant offers nothing to rebut this statement by Fischer. And notably, Defendant's own Director of Information Technology admitted that, like Plaintiff, Defendant

---

[40] Fed. R. Civ. P. 37(3) advisory committee's note to 2015 amendment.

[41] Baier Decl. ¶ 5, ECF No. 110.

[42] Fischer Decl. ¶ 4, ECF No. 90-2.

does not retain its computer's internet history when Defendant replaces its computers.[43] Thus, Plaintiff not only followed its own company practice when Vinck moved to the new workstation, additionally its company practice is consistent with other businesses' practices including, most notably, Defendant.

Defendant cites two cases, *Helget v. City of Hays*,[44] and *Nacco Materials Handling Group, Inc. v. Lilly Co.*,[45] in support of its argument that Plaintiff's reasonable preservation duties included Vinck's internet history. However, those cases are easily distinguishable from this case because the parties in *Helget* and *Nacco* had a duty to preserve internet history based on the face of the complaint or on the nature of the allegations. In *Helget*,[46] the defendant had a duty to preserve internet usage logs because it placed the internet history of the plaintiff and other employees at issue when the defendant argued that one of its grounds for terminating plaintiff was her unauthorized computer use. The plaintiff also sent the defendant a letter very early in the case requesting preservation of certain information, including internet and email usage by each employee in the defendant's police department for the relevant time period in question.[47]

In *Nacco*,[48] the plaintiff was asserting claims for violation of the Computer Fraud and Abuse Act and for computer trespass, alleging that the defendant accessed the plaintiff's website without authorization. The *Nacco* court held the defendant had a duty to preserve internet

---

[43] Turrel Dep., ECF No. 90-4.

[44] No. 13-2228, 2014 WL 1308893, at *3 (D. Kan. Mar. 31, 2014).

[45] 278 F.R.D. 395, 398 (W.D. Tenn. 2011).

[46] 2014 WL 1308893, at *3.

[47] *Id.*

[48] 278 F.R.D. at 398.

history at the time the defendant was served with the complaint because at that moment the defendant "knew or should have known that electronic evidence residing in its computers would be relevant to the litigation."[49]

*Helget* and *Nacco* are thus dissimilar to the facts in this case. There was no allegation until June 2015—more than a year after Vinck had been reassigned a different computer in April 2014—that it was Plaintiff's own employee Vinck who posted the alleged infringing job postings on the FaTJ website. Although Defendant indicates that it first suspected the disputed FaTJ postings were made by Plaintiff in December 2013, Defendant did not raise the issue until June 16, 2015, when its counsel emailed Plaintiff's counsel. There is nothing in this record to support a conclusion that Plaintiff knew or should have known that Vinck's Fall 2013 internet history would be relevant in this case until Plaintiff received the June 16, 2015 letter from Defendant's counsel.

The stated reasons behind the 2015 amendments to Rule 37(e) further support the Court's conclusions in this case. The general intent of amended Rule 37(e) was to address the excessive effort and money being spent on ESI preservation as a result of the continued exponential growth in the volume of ESI, along with the uncertainty caused by significantly differing standards among the federal circuits for imposing sanctions or curative measures on parties who failed to preserve ESI.[50] In revising Rule 37(e), the Advisory Committee expressly instructed that "reasonable steps" to preserve ESI suffice; the Rule "does not call for perfection."[51] The advisory committee also recognized the reality that often there is only limited information

---

[49] *Id.* at 403.

[50] Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

[51] *Id.*

regarding prospective litigation and the scope of information that should be preserved may be uncertain. They emphasize the importance of not being blind to this reality "by hindsight arising from familiarity with an action as it is actually filed."[52] The Court will not use a "perfection" standard or hindsight in determining the scope of Plaintiff's duty to preserve ESI. As noted above, Plaintiff did take reasonable steps to preserve relevant information when it preserved Vinck's email and other ESI in Fall 2013. The case involved only Plaintiff's claims alleging Defendant's unauthorized use of Plaintiff's trademarks and not that Plaintiff improperly accessed Defendant's website. Prior to June 2015, Plaintiff had no knowledge or information from which it should have known that Vinck's internet history would become relevant in the case.

In summary, the Court finds that Plaintiff did not have a duty to preserve Vinck's Fall 2013 internet history prior to June of 2015. As a result, the Court rules that Vinck's Fall 2013 internet history was lost before Plaintiff's duty to preserve it arose and, therefore, there was no breach of any duty to preserve under the facts presented in this case. As no duty was breached, the Court need not reach the issue of whether curative measures or sanctions under Rule 37(e) are appropriate.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion for Spoliation Sanctions (ECF No. 85) is denied.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs related to this motion.

---

[52] *Id.*

IT IS SO ORDERED.

Dated this 8th day of February 2016, at Kansas City, Kansas.

_s/ Teresa J. James_
Teresa J. James
United States Magistrate Judge