IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MARTEN TRANSPORT, LTD.,           )
                                  )
                Plaintiff,        )
                                  )
        v.                        )          Case No. 14-2464-JWL
                                  )
PLATTFORM ADVERTISING, INC.,      )
                                  )
                Defendant.        )
                                  )
_____)


## MEMORANDUM AND ORDER

In this action, plaintiff Marten Transport, Ltd. ("Marten"), a trucking company, alleges that defendant PlattForm Advertising, Inc. ("PlattForm") used Marten's name and trademarks without authorization on websites on which PlattForm advertised truck driver jobs. The matter comes before the Court on cross-motions for summary judgment filed by Marten (Doc. # 91) and by PlattForm (Doc. # 94). For the reasons set forth below, the Court **denies** Marten's motion for partial summary judgment, and it **grants in part and denies in part** PlattForm's motion. PlattForm is granted summary judgment with respect to all claims asserted by Marten based on posts on the FaTJ website, Marten's claims for disgorgement of profits relating to sites other than the JTJ website, and Marten's claim for exemplary damages under Wisconsin statutory law; PlattForm's motion is otherwise denied.

## I.   <u>Background</u>

The following facts are undisputed. PlattForm, which is located and incorporated in Kansas, owns and operates various websites that advertise open driver positions on behalf of commercial trucking companies and that permit interested persons to submit applications for those positions. Those websites include the following sites: JustTruckingJobs.com ("JTJ"), FindATruckingJob.com ("FaTJ"), EliteTruckDrivingJobs.com ("Elite"), and TruckDrivingJobFinder.com ("TDJF"). PlattForm acquired JTJ, Elite, and TDJF in July 2012.

Marten, a Delaware corporation with its headquarters in Wisconsin, is a motor carrier that employs truck drivers throughout the United States. At various times, PlattForm posted Marten's name and registered trademarks on PlattForm's websites. In April 2010, the parties entered into a relationship in which Marten paid PlattForm a monthly fee, PlattForm advertised Marten's job openings on the FaTJ site, and Marten received applications in response to those postings. Marten also posted openings on JTJ when that site was owned by another company, but Marten terminated that relationship on May 31, 2012, and that company was no longer authorized to post content for Marten on JTJ. Nevertheless, when PlattForm acquired JTJ in July 2012, it discovered that the site still contained advertisements for Marten and that the site was continuing to forward applications to Marten. PlattForm then redirected the applications from a Marten e-mail address to its own address so that Marten would no longer receive applications from the site. PlattForm decided not to remove the Marten posts from the site, however, for at

least two reasons—PlattForm believed that removing Marten's information from the site cold hurt the site's search engine ranking, and PlattForm was concerned that removing the information could damage the site itself.

On September 13, 2013, Marten sent PlattForm a letter in which it demanded that PlattForm remove all references to Marten from all of PlattForm's websites. PlattForm then purported to remove all Marten-related posts from its sites. Nevertheless, Marten's information and registered marks appeared on PlattForm's sites and on CraigsList ads posted by PlattForm at various times after September 2013.

Marten initiated the present action in September 2014, in which it asserts the following claims against PlattForm: federal trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114 (Count I); unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); unauthorized use of identifying information, in violation of Wisconsin statutes (Count III); common-law trademark infringement (Count IV); common-law unfair competition (Count V); and tortious interference with prospective contractual relations (Count VI). Plaintiff requests damages, injunctive relief, exemplary damages, and attorney fees. Marten's claims are based on its allegation that PlattForm used its name and marks on the websites without authorization.

PlattForm now seeks summary judgment on all claims by Marten. Marten seeks summary judgment as to liability on its trademark and Wisconsin statutory claims to the extent based on posts other than on the FaTJ website.

## II. **Summary Judgment Standards**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison*

4

*v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. <u>Trademark Claims</u>

Marten asserts trademark claims under the federal Lanham Act, 15 U.S.C. §§ 1114, 1125(a). Section 1114 provides for liability if a person without consent uses in commerce a registered mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" if such use is likely to cause confusion. *See* 15 U.S.C. § 1114(1)(a). Section 1125(a) provides for liability of the following:

> Any person who, on or in connection with any goods or services, or any container of goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

5

  (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

*See* 15 U.S.C. § 1125(a)(1).

  Both parties also seek summary judgment on Marten's common-law trademark claims. Neither party presents any separate argument with respect to those claims, however, as each assumes for purposes of these motions that the claims fail or survive with the corresponding Lanham Act claims.

<em>A. Written License Agreement</em>

  PlattForm argues that the trademark claims fail as a matter of law because Marten consented to the use of its name and marks in a 2010 written agreement, in which Marten granted PlattForm a license to use information provided by Marten on PlattForm's websites. As a preliminary matter, the Court concludes that any such agreement concerning the use of Marten's information on PlattForm's websites was terminated when Marten sent PlattForm a cease-and-desist letter on September 13, 2013. In the written agreement on which PlattForm relies, the only provision relating to the duration and termination of the agreement states that Marten would pay a monthly fee and that "[t]his will be a month by month contract." In the September 2013 letter, Marten unequivocally demanded that PlattForm immediately cease using any content relating to Marten on any of PlattForm's websites. Thus, to the extent that a written agreement provided authorization by Marten for the use of its information and marks, any such authorization ended in September 2013. Indeed, PlattForm made an effort at that time

6

to remove all such references from its websites. Although PlattForm appears to argue that the written agreement disposes of all of Marten's claims, it has offered no argument why the license provided in the agreement lasted beyond September 2013. Thus, the Court concludes as a matter of law that any written contractual authorization was not effective after September 2013, and thus, any such contract does not provide a basis for summary judgment on Marten's claims based on postings after that date.

With respect to the period before the cease-and-desist letter, Marten concedes that it paid for and authorized the use of its information and marks on the FaTJ site, but it does not agree that it authorized such use by PlattForm on any other site. It is undisputed that Marten stopped paying for posts on the JTJ site and ended its relationship with the previous owner before PlattForm acquired that site. PlattForm argues, however, that the written agreement allowed it to post Marten's information on the JTJ site.

In response, Marten argues that the agreement's license did not extend beyond the FaTJ postings for which it was paying. The Court rejects this argument, however, as the plain language of the agreement licenses the use of the information on PlattForm's websites generally. Marten also points to the language of the license to use information "provide[d]" to PlattForm by Marten, and it argues that it never affirmatively provided the information (including its name) to PlattForm. The Court rejects that argument, as the license would include any information relating to Marten of which Marten approved, and there is no argument in this case that PlattForm used a particular mark or information beyond that approved by Marten.

Marten also disputes that it entered into the written agreement submitted to the Court by PlattForm. Certainly there is no question that a contractual relationship existed between the parties, as Marten paid PlattForm and PlattForm posted Marten's information on the FaTJ site with Marten's approval. The issue, however, is whether Marten agreed to the license provision on which PlattForm relies.

In support of this argument, PlattForm has submitted evidence that it sent an unexecuted copy of the written agreement to ACS, a company that secured advertising for Marten; that ACS sent back a Client Information Sheet for Marten; and that the parties' relationship then commenced, with Marten paying for posts and PlattForm posting Marten's information on FaTJ. Marten, on the other hand, notes that PlattForm has been unable to produce a copy of the agreement signed by Marten or by ACS. Marten further presents evidence that the parties did not actually perform as set forth in the written agreement, which called for PlattForm's sites to link to Marten's site and for monthly reports of site visits. Marten also states in a declaration that ACS did not have actual authority to enter into any written agreement with PlattForm.

The Court concludes that a factual dispute remains concerning whether Marten provided the license as set forth in the written agreement. PlattForm argues that Marten accepted the agreement by its performance in entering into the relationship. While a party may accept an offer by its conduct, there is evidence that Marten did not accept the license provision in this case. For instance, as Marten notes, the parties did not perform exactly as set forth in the agreement, which provides evidence that Marten did not intend

8

to enter into that written agreement. Moreover, although Marten paid for posts on FaTJ, it had ceased paying for posts on JTJ, and that conduct provides evidence that Marten did not intend to grant a license that would allow any further posts on JTJ. PlattForm points to a concession in a deposition that Marten employed ACS as its agent in securing advertising, and it notes that ACS acted for Marten with respect to posts on FaTJ; but Marten's declaration provides evidence that ACS was not authorized to enter into the written agreement at issue here, and PlattForm has not argued that ACS's *apparent* authority binds Marten. Thus, there is a fact question concerning the scope of ACS's agency. Moreover, even if ACS did act as Marten's agent, a factual dispute remains concerning whether ACS or Marten accepted all of the terms in the written agreement, including a license that would extend beyond posts on FaTJ. The agreement was not executed by ACS. PlattForm relies on ACS's return of the information sheet; however, the agreement merely provided that it would not begin until that sheet was returned, and the Court cannot conclude as a matter of law that ACS intended to enter into the written agreement by returning that sheet.

Accordingly, viewing the evidence in Marten's favor, the Court cannot conclude as a matter of law that Marten granted a license as set forth in the written agreement, and the agreement thus does not provide a basis for summary judgment in PlattForm's favor on any claim. Nor can the Court rule as a matter of law, viewing the evidence in PlattForm's favor, that no such agreement existed, as PlattForm has provided evidence that ACS did accept this agreement on Marten's behalf.

*B.*     *Claims Based on FaTJ Posts*

The Court next addresses Marten's claims based on posts by PlattForm on its FaTJ site. Marten did not move for summary judgment on those claims, and thus it failed to set forth facts relating to those posts. PlattForm has moved for summary judgment on all claims, however, and Marten is therefore required to provide evidence to support those claims based on FaTJ posts.

PlattForm argues that its is entitled to summary judgment on those claims because Marten's own employee logged in and created (and thus authorized) the FaTJ postings. There is no dispute that PlattForm removed all Marten posts from that site after receiving the cease-and-desist letter in September 2013. PlattForm has presented evidence of the following: it did not post any Marten information on FaTJ after that time; it discovered Marten-related posts on the site in December 2013, which it then removed; Marten posts that appeared on FaTJ in late 2013 were worded and formatted differently from posts that PlattForm creates itself for trucking companies; and the Marten posts, including those attached to the complaint, were created with a login name that had previously been given to Marten. Moreover, in December 2013, when an ACS representative e-mailed to her that ads on FaTJ had been cancelled months before, Jolene Vinck, a Marten employee, responded as follows: "OK, Thanks! I didn't know this and had been posting on there all along! They must have just figured it out! lol." When confronted with this e-mail in her deposition, Ms. Vinck admitted that she was posting on FaTJ.

Marten has not provided its own evidence about any particular posts on FaTJ.

Rather, Marten attempts to controvert PlattForm's evidence by arguing that PlattForm had access to the postings and the site and that PlattForm could have manipulated the data that indicates that Marten made the posts. Marten has offered only speculation, however, without any supporting evidence, that PlattForm could have manufactured evidence and that PlattForm is lying when it states that it did not create any posts on FaTJ. Marten has provided no evidence that it did not create any posts itself on FaTJ. Marten has provided a declaration in which Ms. Vinck states that she made the admission in her deposition upon becoming flustered, and that, although she recalled posting on three other sites, she did not specifically remember posting on the FaTJ site. Ms. Vinck's declaration does not directly contradict the admission in her deposition, however—she does not state that she did *not* post on FaTJ, but only that she does not recall doing so. She could reasonably have admitted to doing so nonetheless based on the contemporaneous evidence provided by her e-mail. Moreover, any statement in her declaration that she did *not* post on the site (if she had made such a statement) would create a sham affidavit, in direct contradiction to her sworn testimony.[1] Finally, even if Ms. Vinck were permitted to take back her deposition admission, her e-mail provides evidence that she did post on the site, and Marten has not provided any evidence to controvert that fact.

The Court therefore concludes that Marten has not created an issue of fact for

---

[1]*See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2003) (sham affidavit in conflict with deposition testimony may be disregarded).

trial, as Marten has provided no evidence that PlattForm created any specific posts on FaTJ concerning Marten without Marten's consent. PlattForm is therefore entitled to summary judgment on Marten's claims based posts on FaTJ, and PlattForm's motion is granted to that extent.

As an additional basis for summary judgment on these claims, PlattForm argues that any confusion created by posts for Marten on FaTJ after September 2013 was not legally sufficient to support Lanham Act claims. Specifically, PlattForm argues that Marten in fact received any applications submitted through the FaTJ postings, as such applications were forwarded to a Marten e-mail address; and that applicants therefore could not have been confused about whether Marten would receive any applications. PlattForm further argues that any confusion about whether Marten was paying PlattForm for those postings or whether the parties had a formal relationship would not have mattered to applicants, who would have been concerned only with Marten's actual receipt of their applications. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 32-33 (2003) ("The words of the Lanham Act should not be stretched to cover matters that are typically of no consequence to purchasers.").

Marten has not responded to this legal argument. In opposing PlattForm's statement of facts, Marten has argued that PlattForm lacks evidentiary support for the fact that applications were forwarded to Marten. The Court agrees that the declaration cited by PlattForm may not be considered—the declaration was by an attorney who had not been previously identified as a witness, and the attorney interpreted records that were

12

not submitted to the Court and to which the parties stipulated only with respect to foundation. There is other evidence that supports this fact, however, as a particular spreadsheet provided by PlattForm—to which the parties stipulated with respect to *admissibility*—shows a Marten e-mail address associated with the FaTJ posts. Marten has not provided any evidence of its own that it did not in fact receive applications generated by posts on FaTJ. Thus, Marten has not shown that any confusion for applicants from the FaTJ posts would have mattered to those applicants, and the Lanham Act therefore does not apply to these claims.

Finally, in light of the uncontroverted evidence that Marten received these applications, Marten cannot show that it suffered any harm from posts on FaTJ, and any claims for damages based on those posts must also fail for this reason.

Accordingly, the Court grants PlattForm summary judgment on any claims based on posts on the FaTJ site.

### C. *Non-Payment by Applicants*

PlattForm argues that Marten's trademark claims fail because applicants who may have been confused by the use of Marten's marks and information without authorization did not pay to use the service and thus are not "consumers" for purposes of the Lanham Act. The Court rejects this basis for summary judgment.

PlattForm has not provided any relevant authority indicating that a cause of action under the Lanham Act may not lie here. The relevant statutory provisions contain no such requirement that the confused person be a purchaser of the good or service. Rather,

they require the use of the marks or information in connection with a commercial service, and there is no dispute that PlattForm's websites provided a service in commerce. Nor has PlattForm cited to any caselaw indicating that a claim may not be based on the confusion of free users of a commercial service.[2] *See, e.g.*, 4 *McCarthy on Trademarks and Unfair Competition* § 23:5 (4th ed. 2015) (noting types of confusion other than purchaser confusion that may support a Lanham Act violation). Accordingly, the Court denies this basis for PlattForm's motion for summary judgment.

### D. *Likelihood of Confusion*

Marten's trademark claims require a showing of likelihood of confusion, and each party argues that it should prevail on that element as a matter of law. The Tenth Circuit has identified the following six factors that may be considered in evaluating whether there is a likelihood of confusion for purposes of these two claims under the Lanham Act:

---

[2]The cases cited by PlattForm are not particularly helpful. In *American Council of Certified Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc.*, 185 F.3d 606 (6th Cir. 1999), the court declined to decide whether Lanham Act "consumers" may be entities that did not purchase the plaintiff's product. *See id.* at 616 n.3. In *A&G Healthplans, Inc. v. National Network Services, Inc.*, 2003 WL 1212933 (S.D.N.Y. Mar. 14, 2003), the court dismissed a Lanham Act claim because the particular confused parties who did not use the claimant's services were not consumers, *see id.* at *1, but it did not suggest that users of a free job service could not be consumers. In *Coastal Communications Corp. v. Adams/Laux Co., Inc.*, 1996 WL 546880 (S.D.N.Y. Sept. 26, 1996), the court noted that subscribers who did not pay for subscriptions to the publications at issue were not "consumers in the typical sense," but it noted that the allegedly false advertising could indirectly affect revenues; it did not cite any authority or indicate that the lack of payment was a barrier to liability. *See id.* at *1 n.1.

(1) evidence of actual confusion; (2) the strength of the contesting mark; (3) the degree of similarity between the competing marks; (4) the intent of the alleged infringer in adopting the contested mark; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the similarity of the parties' products and the manner in which they market them.

*See Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013). The list is non-exhaustive, no one factor is dispositive, and "[t]he importance of any particular factor in a specific case can depend on a variety of circumstances, including the force of another factor." *See id.* Likelihood of confusion is generally a question of fact. *See id.*

The Court concludes that the likelihood of confusion presents a question of fact in this case, as the trier of fact will be required to weigh these and any other factors in light of all of the facts and circumstances in the case. It is true that some of these factors appear to weigh in Marten's favor, as the marks used were identical to Marten's marks, PlattForm had at least some intent to benefit from use of the marks, and at least some applicants were actually confused about whether they were applying for a job with Marten. Nevertheless, it is for the trier of fact to assign the weight to be given to any factor, and the Court cannot say that no reasonable jury could reach a particular outcome with respect to this element. Accordingly, the Court will not decide this issue as a matter of law, and it therefore denies both parties' motions for summary judgment with respect to the issue of liability on Marten's trademark claims.

    E.    *Claims for Damages*

    1.    LOST PROFITS

PlattForm seeks summary judgment on Marten's claims for damages.[3] Specifically, PlattForm argues that there is no evidence that Marten actually lost profits from PlattForm's alleged use of Marten's information and marks.

The parties dispute how many applicants were actually confused by the posts. For instance, PlattForm argues that users who indiscriminately applied to all trucking companies represented on the sites were not likely affected by the presence of Marten's marks or information, even if their applications did not reach Marten. A question of fact exists with respect to such applicants, however, in light of the evidence that Marten's name appeared on the initial page of some posts (which fact could have influenced users). Moreover, it is undisputed that at least some applicants applied only to Marten from PlattForm's sites or applied to all companies from a page devoted to Marten, and those applicants would have wrongly believed that their applications were being forwarded to Marten.

PlattForm argues that there is no evidence that Marten would have hired any particular applicant, or that Marten could not have hired someone else and therefore lost money from the failure to receive any application from PlattForm. In particular, PlattForm notes Marten's stringent hiring standards and Marten's available database of hundreds of thousands of previous unsuccessful applicants from which it could draw. Marten has submitted evidence, however, that it has historically hired a particular

_____

[3]Marten also seeks injunctive relief in this suit.

percentage of applicants, that it typically receives a certain amount of revenue per driver that it employs, that the industry has seen a shortage of qualified drivers, and that it has had to turn down business during the relevant time period because of a lack of drivers. PlattForm challenges this evidence as speculative or conclusory, but its arguments go rather to the weight of the evidence, which must be determined by the trier of fact. The Court also rejects PlattForm's suggestion—made without citation to authority—that Marten must identify a particular applicant that it would have hired. Marten has asserted a claim for lost profits, and such claims are typically supported by estimates. Marten's estimates are not unsupported or unreasonable as a matter of law. Therefore, the Court concludes that a factual dispute remains concerning whether Marten suffered damages in the form of lost profits.

The Court also rejects PlattForm's argument that Marten cannot recover damages because the applications did not go to Marten's competitors, but rather were effectively discarded. PlattForm has cited no authority that would preclude Marten's claims on this basis, as PlattForm's cases relate only the requirement that the infringement occur in a commercial context (which requirement is clearly satisfied here). Moreover, "apply-to-all" applications *did* go to Marten's competitors. The Court denies PlattForm's request for summary judgment on this basis.

## 2. LOSS OF GOODWILL

In the pretrial order, Marten also asserts a claim for damages for loss of goodwill. PlattForm argues in its reply brief that Marten cannot produce evidence that its goodwill

17

was actually harmed by the alleged infringement. The Court will not consider arguments raised for the first time in a reply brief, however. *See, e.g.*, *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)). If at trial Marten cannot produce proper evidence of a loss of goodwill, this claim will be ripe for resolution under Fed. R. Civ. P. 50.

### F.    *Disgorgement of Profits*

PlattForm also seeks summary judgment on Marten's claim for disgorgement of PlattForm's profits. Under the Lanham Act, a plaintiff may be entitled, "subject to the principles of equity," to recover the defendant's profits. *See* 15 U.S.C. § 1117(a). The statute further provides: "In assessing profits the plaintiff shall be required to prove defendant's sale only; defendant must prove all elements of cost or deduction claimed." *See id.* "Under the Lanham Act, plaintiff must show either actual damages or willful action on the part of the defendant as a prerequisite to recover disgorgement of profits." *See Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161 (10th Cir. 2013).

PlattForm argues that its conduct was not willful and that a disgorgement remedy therefore may not be based on that prong in this case. There is evidence, however, that PlattForm used Marten's marks and information for its own benefit, even after Marten initiated the present action. The Court thus concludes that the issue of willfulness cannot be resolved as a matter of law at this stage, but should instead be evaluated in light of all of the evidence at trial.

18

PlattForm also argues that it is entitled to summary judgment on this claim because of a lack of evidence that it actually profited from the unauthorized use of Marten's marks (and thus from the alleged infringement). Under the burden-shifting provision of the statute, however, Marten need only show that PlattForm received revenue from the infringing activity. PlattForm deemed uncontroverted Marten's factual statement that "PlattForm earned approximately $200,000.00 through its trucking websites during the period that it improperly used the Marten Marks." That statement may be too broad, as it is not limited to the particular sites at issue here. Marten has provided as evidence, however, monthly revenue figures produced by PlattForm for FaTJ and JTJ for the period of time at issue in this suit. Marten's claims based on FaTJ posts do not survive, as set noted elsewhere in this opinion. The information concerning JTJ, however, provides evidence of PlattForm's revenues from posts that improperly included Marten's information and thus infringed. Marten has therefore met its initial burden of production of evidence, and summary judgment is not appropriate on this basis.

PlattForm argues that Marten must show that PlattForm actually gained profits attributable to the infringing use, but a requirement that Marten produce such evidence at this stage would improperly undo the statute's explicit burden-shifting. PlattForm's cases in support of this argument are not helpful, as they merely discuss the need for the plaintiff to limit its proof to infringing sales only. In this case, the JTJ site included information on Marten during particular periods, and those sites were thus allegedly infringing. Marten would therefore be required to provide evidence of PlattForm's

revenues from maintaining the JTJ site during those periods. Marten has provided such evidence.

PlattForm will be free at trial to attempt to show that it did not in fact realize any profits attributable to the inclusion of Marten information on the websites (for instance, by showing that revenues were the same whether or not Marten was included on the sites). PlattForm will also have the burden to show its costs (and thus the extent to which its revenues do not constitute profits). There is no basis for a ruling as a matter of law at this time, however, and PlattForm's motion for summary judgment on the disgorgement claim is denied.

The Court notes that Marten has provided evidence only of PlattForm's revenues relating to the JTJ site. The parties have not separately discussed this issue as it relates to CraigsList postings or posts on the Elite and TDJF sites, so it is not clear whether PlattForm had separate revenues from those sites. Marten has provided evidence of revenues only for the JTJ site, however, and thus Marten's claim for disgorgement will be limited to those revenues.

### IV.    Wisconsin Statutory Claim

#### A.    *Choice of Law*

Marten asserts a claim pursuant to two Wisconsin statutes. Wis. Stat. § 943.203(2) makes it a crime for a person to use intentionally any identifying information of an entity without authorization or consent, by representing that the person is acting

with such authorization or consent, for the purpose of obtaining anything of value or a benefit. *See id.* Wis. Stat. § 895.446 provides for a civil cause of action by a person who suffers damage or loss by reason of intentional conduct that is prohibited under Section 943.203. *See id.* A conviction is not required, the plaintiff must prove the violation "by a preponderance of the credible evidence," and a successful plaintiff may recover actual damages, costs of investigation and litigation, and exemplary damages up to three times the amount of actual damages. *See id.*

The Court must first address the issue of choice of law. Because Marten suffered the alleged financial harm in Wisconsin, the site of its headquarters, Wisconsin law would ordinarily govern any tort claims in this case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 U.S. 496 (1941) (in diversity action, forum state's choice-of-law rules govern which state's substantive law applies); *Ling v. Jan's Liquors*, 237 Kan. 629, 634-35 (1985) (under Kansas law, tort actions are governed by the law of the state in which the tort occurred, that is, the state in which the wrong was felt); *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690 (D. Kan. 2007) (in case involving financial harm, court applies the law of the state of the plaintiff's residence).

PlattForm argues that Marten's claim under the Wisconsin statutes is precluded by the parties' written agreement, which contains a Kansas choice-of-law provision. The Court rejects this argument. First, as set forth above, a factual dispute remains concerning whether Marten accepted any particular term in the written agreement. Second, any written agreement was terminated in September 2013 and thus would not

apply to any claims based on posts after that date. The provision in question provides that Kansas law shall govern "[t]his agreement and the rights of the parties hereunder." Thus, by its plain terms, the provision would not preclude a claim under another state's statutes for unauthorized use of information during the period when the contract was not in force.

PlattForm also argues that Kansas courts do not enforce other states' penal statutes and that these Wisconsin statutes are penal by virtue of the exemplary damages provision. Marten does not dispute that the statutes are penal in part, but it argues that the statutes are also compensatory, as they provide for actual damages, and that its claim is therefore not barred.

In *State of Oklahoma ex rel. Oklahoma Tax Commission v. H.D. Lee Co.*, 174 Kan. 114 (1953), the Kansas Supreme Court noted the "rule that a penal statute will not be enforced outside the territorial jurisdiction of the legislature enacting it," but it also noted that the rule "applies only to such statutes as are entirely penal and not to those which are in part compensatory." *See id.* at 121 (citing *Great Western Machinery Co. v. Smith*, 87 Kan. 331 (1912)). In *Great Western*, the Kansas Supreme Court stated the rule as follows: "No action can be maintained in Kansas upon the statute of another state, authorizing the recovery of punitive damages only, or of a lump sum in which punitive and compensatory damages are inseparably blended." *See Great Western*, 87 Kan. at 335 (citing *Dale v. Atchison, Topeka & Santa Fe R.R. Co.*, 57 Kan. 601 (1897), and *Rochester v. Wells Fargo & Co. Express*, 87 Kan. 164 (1912)). The court held that

22

the purpose of a law allowing punitive damages was penal and "not in any degree to compensate plaintiff's loss, every element of which is covered by the allowance of actual damages." *See id.*

The Court does not agree with Marten's assertion that punitive and compensatory damages are "inseparably blended" here. In *Dale*, on which the *Great Western* court relied for this language, the other state's statue provided for damages in the lump sum amount of $5,000 in every case of liability. *See Dale*, 57 Kan. at 607. The court refused to enforce that damages provision because it was penal in part, as it did not provide only compensatory damages; and the court further ruled that it could not enforce the statute only to the extent of compensatory damages suffered because the statute provided only one (lump sum) measure of damages that could not be applied. *See id.* at 607-08. This case is distinguishable from *Dale*, as the statute in question provides separately for an award of compensatory damages and for an award of exemplary damages. Thus, the penal and compensatory elements of the statute are not inseparably blended and may be enforced selectively.

Accordingly, the Court concludes, applying choice-of-law rules of the State of Kansas, that it may not enforce the penal provision of Wis. Stat. § 895.446(3)(c), which provides for an award of exemplary damages, and PlattForm is granted summary judgment on Marten's claim for such damages under the Wisconsin statute. On the other hand, there is no basis for refusing to enforce the statute's compensatory damage provisions, and the Court denies PlattForm's motion for summary judgment on Marten's

statutory claim to that extent.[4]

## B.    *Violation of the Statute*

The Court next addresses whether PlattForm has violated the statute—an issue that each party argues may be decided in its favor as a matter of law at this time. PlattForm first argues that the statute should not apply in this trademark context. PlattForm cannot provide any authority to support that argument under Wisconsin law, however, and its citations to cases involving other states' statutes with different language are not helpful. In the absence of relevant authority interpreting or applying this statute, there is no reason for this Court not to apply the statute to conduct that falls within the scope of its plain terms.

PlattForm next repeats its argument that it did not act without authorization in light of the parties' written license agreement. Again, however, a fact question remains concerning whether the license provision is effective. Thus, the Court cannot award PlattForm summary judgment on that basis, and the Court must also deny Marten's motion for summary judgment on this claim to the extent based on conduct prior to the termination of any written agreement in September 2013. Any such license would not affect Marten's statutory claim based on posts after that date.

PlattForm also argues that it is entitled to summary judgment based on a lack of

_____

[4]In the context of this issue, the parties have not addressed the statute's provision for the recovery of costs of investigation and litigation. Because that provision would appear to be compensatory in nature, there is no reason for the Court to refuse to enforce the provision.

evidence that it represented that it had Marten's authority to post Marten's information, as required for a violation of the statute. The Court concludes that a question of fact remains concerning that element, however, as a reasonable jury could find that PlattForm did effectively represent such consent by posting Marten's information on its site and allowing users to attempt to apply for a position with Marten.

PlattForm also argues that it did not violate the statute because it did not obtain anything of value by posting Marten's information on the sites. Marten has provided evidence that PlattForm posted Marten's information for a variety of reasons, including to help PlattForm's search engine ranking, to avoid possible damage to its websites, and to drive traffic to the sites and thus to sell more advertising and increase revenue. PlattForm argues that it did not obtain anything of value by avoiding possible damage, but the avoidance of loss can certainly have value (as evidence by the cost of insurance), and the statute does not make any such distinction. Moreover, Marten has provided evidence of other benefits as well.

PlattForm further argues that although it may have sought such benefits, there is no evidence that it actually obtained those benefits—that is, that there is no evidence that its ranking actually improved, or that the damage would have otherwise occurred, or that its revenue increased. The statute contains no such requirement, however—it requires that the violator have used information for the *purpose* of obtaining something of value or a benefit. *See* Wis. Stat. § 943.203(2). Marten has provided evidence that PlattForm acted with such a purpose.

Finally, the Court concludes that the question of PlattForm's intent provides a question of fact for the jury. Accordingly, the Court also denies Marten's motion for summary judgment on the issue of PlattForm's liability on this claim.

## V.      <u>Tortious Interference Claim</u>

In summary fashion, PlattForm also seeks judgment on Marten's claim for tortious interference with prospective contractual relations. PlattForm argues that Marten's allegation that it would have realized any business expectancy is purely speculative or conjectural.[5] The Court rejects this argument, as Marten has submitted evidence to support the allegation that it would have hired additional drivers, and the Court cannot say that the matter is too speculative as a matter of law. The Court thus denies PlattForm's motion for summary judgment on this claim.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff Marten's motion for partial summary judgment (Doc. # 91) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant PlattForm's motion for summary judgment (Doc. # 94) is hereby **granted in part and denied in part**. The motion is granted with respect to all claims asserted by Marten based on posts

---

[5]PlattForm cites only a single Kansas case; as noted above, however, Marten's tort claims are governed by Wisconsin law.

on the FaTJ website, Marten's claims for disgorgement of profits relating to sites other than the JTJ website, and Marten's claim for exemplary damages under Wisconsin statutory law, and PlattForm is granted summary judgment on those claims. The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 22nd day of February, 2016, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge