## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

MARTEN TRANSPORT, LTD,

     Plaintiff,

PLATTFORM ADVERTISING, INC. ,

     Defendant.

CASE NO. 14-CV-02464

## MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY

PlattForm advertising submits the following Memorandum in Support of its Motion To Exclude Expert Testimony.

## INTRODUCTION

Marten disclosed two experts whose opinions should be excluded. The first – Ronald Fischer – performed the clerical task of pulling archived information off the internet while offering no opinions whatsoever sufficient to authenticate the archived information he pulled. In fact, no witness who can testify in this case can authenticate the information Mr. Fischer pulled. The second expert – Richard Follis – observes that there is a shortage of trucking drivers (somewhere) and extrapolated from that generality the "extreme importance" of Marten "being able to capture every qualified driver possible." Mr. Follis – who specializes in recruiting within the transportation industry – then ventures into the complex field of internet search engine optimization (SEO), contending that merely using words on the internet necessarily enhances a websites SEO. Apart of the fact that Mr. Follis's opinion is flat wrong, he makes no attempt to determine any relevant internet postings impact on the SEO of any relevant website. The purpose of an expert witness to assist a jury comprehend complicated and technical evidence within the scope of the expert's specialty. But Mr. Follis and Mr.

Fischer have nothing to offer a jury other than confusing unreliable testimony. This Court should exclude them from testifying.

## FACTUAL OVERVIEW

PlattForm owns and operates certain trucking websites. Marten alleges that PlattForm impermissibly used its intellectual property on PlattForm's websites without Marten's permission. In its summary judgment ruling, this Court allowed Marten's claims regarding PlattForm's alleged use of Marten's intellectual property on three websites – justtruckingjobs.com, elitejobfinder.com, and truckdrivingjobfinder.com – to go to trial. Marten claims that PlattForm improperly used Marten's intellectual property on the three websites from August 2012 through September 2013. To support its claims that PlattForm actually posted Marten content on the three websites, Marten disclosed the expert report of Mr. Ronald Fischer, a self-described computer forensics expert. Marten also argues that PlattForm used Marten's intellectual property on the three websites to increase its websites' search engine ranking. To support its argument that Marten-related content increased the search engine ranking of the three websites, Marten intends to present the expert testimony of Mr. Richard Follis, a commercial truck driver recruiter and consultant.

I.    Ronald Fischer's expert report relies exclusively on the Internet Archive's Wayback Machine.

Mr. Fischer is a self-described computer forensics specialist who states he is able to "preserve, identify, extract, recover, analyze, and document electronic files and data." [Ex. A, p. 1.] He is not a web archival specialist. He does not identify any experience with preserving, reviewing, or identifying previously existing internet web pages. [Ex. A, p. 1.] For example, his resume contains no reference to any familiarity with the creation, use, or operation of the Internet Archive. [Ex. A, p. 1.] The Internet Archive is a not-for-profit corporation that purportedly makes images of previously existing webpages available to the public through the use of its "Wayback Machine." See

https://archive.org/about/. Mr. Fischer does not claim to be an Internet Archive employee and does not state that he is familiar with archive.org's operation or the techniques archive.org uses to preserve previously existing webpages. [Ex. A, p. 1.]  Instead, Mr. Fischer states that he reviewed archive.org for previously existing justtruckingjob.com webpages. The analysis section of his report states that "MARTEN's IP was searched for using the Internet Archive." [Ex. A, p. 2.] The report is unclear if Mr. Fischer completed the search on Internet Archive himself or had a colleague execute the search. He then purports to identify the results of his search by listing screen shots of truncated versions of the Internet Archive's webpages into his report. [Ex. A, pp. 3 -13.] After identifying the purported screen shots, Mr. Fischer states:

> 22. Based upon the forgoing webpage evidence for the websites in question and their associated dates that they appeared on the internet, I conclude that PLATTFORM used MARTEN's IP on their websites and failed to remove it even after receiving a cease and desist letter dated September 13, 2013 from MARTEN's attorneys.

[Ex. A, p. 13.] Mr. Fischer's report is entirely "based upon" the Internet Archive's "webpage evidence." [Ex. A, p. 13.]

II.    Mr. Follis is unqualified to serve as an expert witness.

Mr. Follis's report is perplexing. In his report, he opines that websites strive for "optimization" and that there is a shortage of commercial truck drivers. [Ex. B, pp. 4-5.] From these general observations, Follis leaps to the specific conclusion that PlattForm's search engine optimization was enhanced, Marten's was diminished, and Marten placed "extreme importance" on "being able to capture every qualified driver possible."  [Ex. B, pp. 4-5.] His attached CV is missing a sixteen-year period. His resume indicates that he has "taken business classes" at Florida Southern University, worked as a fleet manager for a small trucking companies until 1997, and then started a business in 2013. [Ex. B, pp. 1-2.]  What Mr. Follis did between 1997 and 2013 is undisclosed. He did not disclose any experience with operating or maintaining websites, knowledge or training

regarding the analytical tools that Google, Yahoo, Bing, and other search engines use to optimize search results, or any training and experience with website creation, structure, links, search terms, search optimization. In addition, he did not disclose any methodology for reaching his conclusions. [Ex. B, pp. 1-2.]  He evidently reviewed no data unique to the parties in this case.

## ARGUMENT AND ANALYSIS

I.     <u>This Court's standards for admitting expert testimony are well known.</u>

The Court has broad discretion in deciding whether to admit expert testimony. Federal Rule of Evidence 702 states that a witness who is qualified by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999). In order to determine whether an expert opinion is *admissible*, the Court performs a two-step analysis. "[A] district court must [first] determine if the expert's proffered testimony . . . has 'a reliable basis in the knowledge and experience  of his discipline.'" *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)). Second, the district court must further inquire into whether the proposed testimony is sufficiently "relevant to the task at hand." *Id.* An expert opinion "must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation . . . absolute certainty is not required." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th

Cir. 2003). And it is not necessary to prove that the expert is "indisputably correct," but only that the "method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Id.*

II.     Mr. Fischer's proposed expert testimony report is deficient because it is entirely based upon the work of the expert creators of the Internet Archive.

An expert witness may not base his expert testimony on the research and work of another expert, especially when that expert is undisclosed. Mr. Fischer's expert report, including his conclusion and methodology,  is entirely "based upon" the Internet Archive. However, Mr. Fischer has not identified technological or scientific experience with the Internet Archives' methods of capturing previously existing versions of webpages or experience regarding how those previously captured pages are retrieved, stored, or categorized. Mr. Fischer has no experience with internet web-page archiving and cannot testify as to how the Internet Archive created the records that he **solely** relies upon in support of his conclusion that PlattForm used Marten's intellectual property rights. An explanation of how the Internet Archive works requires expert testimony. See *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1083 (D. Minn. 2015) ("Because the websites are no longer readily accessible, obtaining previous versions of the websites 'would require [the expert witness] to apply knowledge and familiarity with computer and the particular [internet archiving] software well beyond that of the average layperson.' This constitutes 'scientific, technical, or other specialized knowledge' within the scope of Rule 702.").

This is problematic for several reasons. First, Mr. Fischer does what any lay person can do when he visits the Internet Archive's webpage and executes a search for "justtruckingjobs.com." Relaying testimony that could and should have been provided by another expert "is not an example of expertise." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000). But that is precisely what Mr. Fischer attempts to do. Mr. Fischer is unfamiliar with the archiving software, its

limitations, and operation. He is unable to explain how the Internet Archive works or its relevancy to this litigation. Instead, Marten offers Mr. Fischer to prejudicially bolster (without any explanation) its argument that "PLATTFORM used MARTEN's IP on their websites."  [Ex. A, p. 13.] Mr. Fischer's expert report, therefore, is based entirely upon other scientific expert hearsay evidence that he is unqualified to consider and testify about.

In a leading opinion on the subject, Judge Posner, writing for the United States Court of Appeals for the Seventh Circuit, concluded that a "scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002). In *Dura Auto.*, the plaintiff offered testimony from a sole expert witness. The defendants asked that the expert be barred from testifying, arguing that his conclusions were unreliable and lacked a proper foundation because they were based on scientific models he did not create. The plaintiff responded by presenting affidavits from four new individuals who created the models. *Id.* at 612. The district court struck the affidavits as an untimely disclosure of additional expert witnesses, struck the plaintiff's disclosed expert because the expert lacked a foundation to testify, and then granted the defendants judgment. The Seventh Circuit affirmed, finding the new experts to be untimely and improper. *Id.* at 616  Absent these four untimely disclosed experts, the Circuit Court concluded the disclosed expert's " testimony would have rested on air." *Id.* at 615.

Mr. Fischer's testimony runs afoul of significant Rule 702 requirements. He possesses no actual knowledge, skill, experience, training or education regarding website archiving or retrieval of archived websites. He lacks a "a reliable basis in the knowledge and experience  of his discipline." *Norris,* 397 F.3d at 884; *see also Mitchell*, 165 F.3d at 780 (requiring expert witness to have actual knowledge). His "scientific methodology," consists entirely of visiting the Internet Archive's

webpage and printing to .pdfs screen shots of the webpage. In his own words, Mr. Fischer's proffered testimony is entirely "based upon" the Internet Archive's retrieval, archival, and search process. But Mr. Fischer is unfamiliar with and unable to express an accurate conclusion regarding the Internet Archive's process. See *Dodge*, 328 F.3d at 1222 (10th Cir. 2003) (expert opinion must be based on facts that enable him to give an accurate conclusion). His report certainly makes no attempt to. Mr. Fisher's testimony, like the expert in *Dura Auto*., rests on air. This Court should exclude his testimony.

III.   Mr. Fischer's report is an improper surrogate for otherwise inadmissible records.

Mr. Fischer's report is entirely based upon a review of the Internet Archive's webpages. The webpages are hearsay. The proffered testimony is improper because it relies on unauthenticated documents and because the webpages are hearsay.

A.   Fischer's report relies on unauthenticated and inadmissible documents.

Rule 901 of the Federal Rules of Evidence requires authentication of evidence "as a condition precedent to admissibility." Fed. R. Evid. 901. This requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* Web-sites are not self-authenticating. *Sun Protection Factory, Inc. v. Tender Corp*., 2005 U.S. Dist. LEXIS 35623, 2005 WL 2484710, slip op. at 6, n.4 (M.D. Fla. October 7, 2005). To authenticate printouts from a website, the party proffering the evidence must produce some statement or affidavit from someone with knowledge of the website, *e.g.*, a web master or someone else with personal knowledge of the website's creation and operation. *In re Homestore.com, Inc. Sec.Litig.*, 347 F.Supp.2d 769, 782 (C.D. Cal. 2004) (quotations omitted); *see also St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 2006 U.S. Dist. LEXIS 28873, *5, (M.D. Fla. May 12, 2006).

Courts admit Internet Archive screen printouts into evidence, at least for the purposes of summary judgment, only when accompanied by a declaration from an Internet Archive employee

authenticating the records. See *Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, 790 F. Supp. 2d 965, 981 (S.D. Iowa 2011); *St. Luke's Cataract & Laser Inst., P.A.*, 2006 U.S. Dist. LEXIS 28873, *5 (not considering Wayback Machine evidence absent an authenticating document from an Internet Archive employee); *Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 277-278, 2008 U.S. Dist. LEXIS 92021, *70 (N.D.N.Y 2008) (holding in a trademark infringement case that "Defendants correctly point out that the Adams Declaration cannot authenticate the search results from www.archive.org because such evidence may only be authenticated by a knowledgeable employee of the website."); *see also Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017, 2007 U.S. Dist. LEXIS 71246, 2007 WL 2781246, at *6 n.4 (S.D.N.Y. Sept. 24, 2007) (finding such evidence inadmissible under Federal Rule of Evidence 901; *Novak v. Tucows, Inc.*, No. 06-CV-1909, 2007 U.S. Dist. LEXIS 21269, 2007 WL 922306, at *5 (E.D.N.Y. March 26, 2007) (noting such evidence is not authenticated and inadmissible hearsay).

Plattform acknowledges that an expert may rely on inadmissible evidence under Rule 703. However, "expert testimony may not be used to establish underlying facts not otherwise in evidence." *In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 264 (6th Cir. 2006). An expert cannot "testify for the purpose of vouching for the truth" of what another has told the expert: an expert is not to serve as a "spokesman" for another. *Matter of James Wilson Associates*, 965 F.2d at 173. Without "affirmative proof of the underlying facts," an expert is a "mere mouthpiece[] for others." *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 326 (N. D. Ill. 2008).

Mr. Fischer's expert testimony relies on the unauthenticated screen shots of the Internet Archive. PlattForm acknowledges that Marten is currently seeking to depose out-of-time and without leave a representative of the Internet Archive, presumably for the purposes of authenticating

records.[1] However, Mr. Fischer cannot authenticate the records himself and should not be allowed to be the spokesman for unauthenticated and improper documents.

B.      Marten cannot use Mr. Fischer as a backdoor for introducing hearsay to the jury.

In this Court (and others), postings from internet websites that are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted are generally considered hearsay under Fed. R. Evid. 801. See *Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1230 (D. Kan. 2008) (recognizing the general rule that internet webpages are hearsay); *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 774 (S.D. Tex. 1999) (excluding internet evidence submitted to prove that defendant actually owned the vessel CAPT. LE'BRADO, stating that "any evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretation of the hearsay exception rules found in Fed. R. Civ. P. 807."); *Engers v. AT&T*, (In re Engers), 2005 U.S. Dist. LEXIS 41682, at *6, 2005 WL 3988698, at *2 (D.N.J. Sept. 8, 2005) (finding inadmissible hearsay evidence because "[the "ad hoc" internet survey] is submitted only to demonstrate the truth of the matter asserted in the survey results, namely, that 221 people never received the Summary Plan Description in early 1998"); *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000) (declining to admit web postings where defendant was unable to show that the postings were authentic, and holding that even if such documents qualified under a hearsay exception, they are "inadmissible if the source of information or the method or circumstances of preparation indicate a lack of trustworthiness"); *Novak v. Tucows, Inc.*, 2007 U.S. Dist. LEXIS 21269, *15-16, (E.D.N.Y. Mar. 26, 2007) (concluding that Internet Archive postings were hearsay).

Even if Marten subsequently authenticates the Internet Archive screen shots, the documents may remain hearsay because they remain out of court statements offered to prove the truth of the

---

[1] PlattForm intends to file a Motion to Quash Marten's untimely attempt to take a deposition.

matter asserted – that PlattForm hosted webpages that offered job opportunities with Marten. While Federal Rule of Evidence 703 allows an expert to rely on hearsay if "experts in the particular field would reasonably rely on" it, "Rule 703 cannot be used as a backdoor to get the evidence before the [fact finder]." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc*., 711 F.3d 1348, 1373 (Fed. Cir. 2013*) cert. denied*, 134 S. Ct. 900 (2014) (quoting *Emigh v. Consol. Rail Corp*., 710 F. Supp. 608, 612 (W.D. Pa. 1989)); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 525 F. Supp. 2d 558, 664 (S.D.N.Y. 2007) ("It is true that under Rule 703, experts can rely on hearsay in reaching their own opinions. But a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony."). Even where experts are permitted to rely on hearsay information, hearsay opinions typically remain inadmissible and, where hearsay is admitted, it may never be considered for the truth of the matter asserted. *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 734 n.9 (10th Cir. 1993) ("When an expert relies on hearsay information to form an opinion, '[t]he hearsay is admitted for the limited purpose of informing the jury of the basis of the expert's opinion and not for proving the truth of the matter asserted.'")

Mr. Fischer's expert report is a recitation of hearsay sandwiched between two paragraphs of opinion. [Ex. A, pp. 3-13.]  In *Broadspring, Inc. v. Congoo, LLC*, 2014 U.S. Dist. LEXIS 116070, *46-47 (S.D.N.Y. Aug. 20, 2014), the District Court for the Southern District of New York was presented with an expert report heavily "devoted to reproducing screenshots of archived Internet pages." *Id.* The Court criticized the report as an "improper regurgitation of hearsay," and prevented the expert from testifying with regard to certain matters. *Id.* Mr. Fischer's report is nearly identical. His entire report is "based upon" the Internet Archive, which he attempts to corroborate by summarily concluding that the hearsay shows that "PLATTFORM used MARTEN's IP on their

websites."  Marten cannot use Mr. Fischer as a conduit for hearsay. His testimony should be excluded. *See Law v. Na't Collegiate Athletic Ass'n*, 185 F.R.D. 324, 341 (D. Kan. 1999) ("The NCAA basically presented [the expert] as a channeler, seeking to present non- expert, otherwise inadmissible hearsay through the mouth of an economist.").

IV.    <u>Mr. Follis's report is facially deficient under Rule 702 because it contains nothing but speculation and conjecture.</u>

       Marten offers the expert testimony of Richard Follis for two apparent purposes. First, Mr. Follis opines that a "truck driver shortage" "is an indicator of the extreme importance of a carrier [such as Marten] being able to capture every qualified driver possible."  Second, Mr. Follis opines that listing Marten on websites necessarily enhanced PlattForm's search engine optimization. Mr. Follis's first opinion is deficient because the fact of a nationwide truck driver shortage says nothing about Marten's ability to hire qualified drivers, much less Marten's **need** to hire the driver applicants who sought employment via PlattForm's websites. Mr. Follis's second opinion is deficient because nothing remotely suggests that Mr. Follis knows anything about search engine optimization and, even if he does, his simplistic opinion that merely throwing a word on a website "enhances optimization" is unreliable, unhelpful, and prejudicial.

       In performing a *Daubert* analysis this "court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702). If the expert is sufficiently qualified, the district court must then consider whether the expert's opinion is both relevant and reliable. *Taber v. Allied Waste Sys.*, 2016 U.S. App. LEXIS 3587, *12 (10th Cir. Okla. Feb. 25, 2016). To determine reliability, this Court considers the following factors: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error

associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. Colo. 2003).

Mr. Follis begins his report by providing an unauthenticated hearsay chart that purports to show a shortage of trucking drivers somewhere in the United States or the world (it is unclear which). The chart states:


This chart from the ATA shows the projected shortfall:



The truck driver shortage is expected to surge to 239,000 by 2022. And the ATA estimates that the industry needs on average 100,000 new drivers each year over the next decade.

Other than identify the chart as coming from the ATA, no other information is provided about the information. What the ATA is and when and where this information came from is unknown. In his next paragraph, Mr. Follis draws several conclusions without explaining his methodology. He states:

The previous data is an indicator of the extreme importance of a carrier being able to capture every qualified driver possible. To capture theses drivers advertising is an absolute essential to their success. Success is largely based on name recognition, reputation, pay, and the type of routes a driver is offered. In today's market the two most compelling ads offer local and dedicated routes. Drivers more than ever want a more stable and predictable income and the opportunity to be home weekly, if not daily. There are fewer and fewer drivers willing to accept position that keeps them away from home for 2-3 weeks with the unsure availability of freight to keep them moving  from one state to the next. In a dedicated or local scenario these concerns are largely addressed, making them much more attractive to potential drivers.

In that paragraph alone, Mr. Follis forms the following opinions:  (1) carriers must capture qualified drivers to be successful, (2) success is based on name recognization, reputation, pay and routes, (3) drivers want stable and predicable income with a chance to be home; (4) fewer drivers to accept positions that keep them away from home. The apparent methodology that Mr. Follis relies on to reach these conclusions is the "previous data," specifically, the unidentified and unexplained ATA chart. Mr. Follis offers nothing more than his "subjective belief or unaccepted speculation." *See Mitchell*, 165 F.3d at 780. He evaluates no actual data regarding Marten's actual applicant pool, hiring needs, or the demand for its services. *Del Monte Fresh Produce Co. v. Net Results, Inc.,* 77 So. 3d 667, 675 (Fla. 3d DCA 2011) ("We also find no record basis upon which to conclude that [defendant] was somehow prevented or precluded from obtaining actual telecommunications and information system billings from non-party vendors, allegedly necessitating Chopek's reliance on estimates and extrapolation.")  It is unclear why Mr. Follis's extrapolation was necessary at all, but there is no basis for simply assuming that because there is allegedly a shortage of truck driving applicants, such shortage necessarily impacts Marten or that Marten must therefore need to "capture every qualified driver possible" or cannot achieve "success." *In re Welding Fume Prods. Liab. Litig.,* 2010 U.S. Dist. LEXIS 146067, *219 (N.D. Ohio June 4, 2010) ("I also believe that it is completely inappropriate for Miss Booth to extrapolate from general Navy practices to specific practices at any specific Naval air base."); *Hoque v. Ashcroft,* 367 F.3d 1190, 1198 (9th Cir. 2004)

("The fact that political violence in Bangladesh is widespread says very little about whether Ahsanul was personally responsible for inciting violence in the May 1996 demonstration. "). There is no methodology, no scientific explanation, no testable hypothesis, and no way to subject Mr. Follis's statements to peer review. Mr. Follis's opinion cannot be tested or controlled. Mr. Follis's opinion fails every element of the *Daubert* reliability test and is highly prejudicial.

In the next paragraphs Mr. Follis presents opinions regarding optimization of websites. He states:

Advertising over the past 15 years has transformed dramatically. Newspapers, trucking magazines, and mailers have been replaced by online products. With the advent of the web, portable computers, I phones, etc., online recruiting is now and will continue to be the future of recruiting. Products such as pay per click, Craig's list, and Trucking websites are now generating a larger number of viable class A driver applications. Consequently, truckload carriers are constantly looking for a better mousetrap to attract qualified class A drivers. Because of the new technology age this begins with a well thought out web page containing as many key words, pictures, and videos as possible. Key word examples are trucking, truck driver, driving jobs, class A drivers, one word description of routes, (local, dedicated, regional, OTR) etc. The next step is to get your website seen. This is where optimization comes in. Trying to optimize your web site on your own is very costly. However, if you subscribe to a pay per click provider or trucking websites you automatically increase theirs and your optimization.

Every carrier listed on their websites enhances optimization by increasing the key word menu, pictures, videos, which in turn raises their awareness with search engines such as Yahoo and Google. More awareness and better positioning on search engine pages equals better numbers to attract new clients. Unfortunately, this is done at the expense of carriers who have not authorized placement and are not receiving application. Carriers on the sites who have given authorization benefit from those application they intended to go to Marten Transport, LTD.

Search engine optimization is the process by which a website strives to "increase targeted Internet traffic by optimizing the website for search engines; this involves editing a website's content and code to increase its relevance to specific keywords and to remove barriers to the indexing activities of search engines." *Campmor, Inc. v. Brulant, LLC*, 2013 U.S. Dist. LEXIS 57867, *2 (D.N.J. Apr. 23, 2013). Search engine optimization is extraordinarily complex. *See Silver v. Brown*, 382 Fed. Appx. 723, 726 (10th Cir. 2010) (quoting Viva R. Moffat, Regulating Search, 22 Harv. J.L.

& Tech. 475, 481-82 (Spring, 2009), for proposition that "an entirely new industry, search engine optimization ('SEO'), has arisen to assist website owners in improving their rankings in search engine results"); *Ascentive, LLC v. Opinion Corp.,* 842 F. Supp. 2d 450, 455 (E.D.N.Y. 2011) (search engine "lists or rankings, as they are sometimes called, are the result of each search engine's algorithm—a complex mathematical formula—the exact mechanics of which are often considered a trade secret by search engine companies such as Google, the leader among search engines").

Experts that testify in this field therefore have significant computer website experience and a familiarity with algorithms that search engines use to generate page ranks returning search engine results. *See J.S. & L.S. v. Am. Inst. for Foreign Study, Inc.,* 2013 U.S. Dist. LEXIS 136073, *45-46, 2013 WL 5372531 (W.D. Tex. Sept. 24, 2013). There is nothing in Mr. Follis's CV to indicate that he has ran a website or is familiar with search engine algorithms, back-linking, or any of the other way websites attempt to increase their search engine optimization. Rather, Mr. Follis's background is in transportation industry recruiting. His education consists of "taking business classes" at Florida Southern University. After working in retail, he worked in fleet development for various companies until 1997. Mr. Follis does not explain what he did from 1997 to 2013 because the resume and CV he produced pursuant to Rule 26 provides no information regarding that 16-year time period. [Ex. B; Follis Report, pp. 1-2.] He apparently has never operated a website, and has no experience with search terms or search engine optimization or any familiarity with the operation of the page-ranking algorithms of search engines. Mr. Follis is simply unqualified to testify about website SEO, not to mention the SEO of websites maintained by PlattForm.

It is therefore not surprising that the predominant conclusion contained in Mr. Follis's expert report – that "[e]very carrier listed on [trucker recruiting] websites enhances optimization by increasing the key word menu, pictures, videos, which in turn raises their awareness with search

engines such as Yahoo and Google" – is fatally over-simplistic and flat wrong. Mr. Follis would have the Court believe that merely utilizing a carrier's name on a trucking website will necessarily enhance search engine optimization. Perhaps Mr. Follis's conclusion would have been correct fifteen years ago. *See Brookfield Communs., Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1045, (9th Cir. 1999) ("The more often a term appears in the metatags and in the text of the web page, the more likely it is that the web page will be 'hit' in a search for that keyword and the higher on the list of 'hits' the web page will appear."). But "the technological landscape today is vastly different than it was in 1999 when the Ninth Circuit decided *Brookfield*." *Ascentive, LLC v. Opinion Corp.,* 842 F. Supp. 2d 450, 467 (E.D.N.Y. 2011). "[S]earch engines today primarily use algorithms that rank a website by the number of other sites that link or point to that website." *Id.*

> If you own a Web site, for instance, about Chinese cooking, your site's Google ranking will improve as other sites link to it. The more links to your site, especially those from other Chinese cooking-related sites, the higher your ranking. In a way, what Google is measuring is your site's popularity by polling the best-informed online fans of Chinese cooking and counting their links to your site as votes of approval.

Id. at 455 (quoting David Segal, The Dirty Little Secrets of Search, N.Y. Times, Feb. 12, 2011).

Without explanation, Mr. Follis concludes that a trucking website's optimization "automatically increases" with the presence of a trucking company. He then concludes that by having more carriers on a website such website is positioned to "attract new clients." Mr. Follis provides no evidence that can be scientifically tested. He identifies nothing – no surveys, no published sources, no analysis – to support his opinions. And, importantly, he conducted no analysis of the trucking websites that are actually at issue in this lawsuit to determine how anything that happened in this case actually impacted the website of any party. Mr. Follis's opinion cannot be tested or controlled and fails the *Daubert* reliability test.

**CONCLUSION**

PlattForm respectfully asks that this Court exclude the offered expert testimony of Mr. Follis and Mr. Fischer in its entirety.

Dated this 21st day of March 2016.

**/s Alan L. Rupe**
ALAN L. RUPE, #08914
JASON D. STITT, # 22216
JEREMY K. SCHRAG, #24164
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 North Waterfront Parkway, Suite 150
Wichita, Kansas 67206
Telephone: 316.609.7900
Facsimile: 316.462.5746

*Attorneys for PlattForm Advertising, Inc.*

4836-0098-6671.1

17

## **CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I certify that I am an employee of Lewis Brisbois, and that on this

21st day of March, 2016, I did cause a true copy of  to be served via electronic service by the U.S.

District Court CM/ECF system to the parties on the Electronic Filing System.


By    **/s Alan L. Rupe**

Alan L. Rupe, an Employee of
LEWIS BRISBOIS BISGAARD & SMITH LLP