IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARTEN TRANSPORT, LTD.,           )
                                  )
              Plaintiff,          )
                                  )
v.                                )   Case No. 14-2464-JWL
                                  )
PLATTFORM ADVERTISING, INC.,      )
                                  )
              Defendant.          )
                                  )
_____)

## MEMORANDUM AND ORDER

In this action, plaintiff Marten Transport, Ltd. ("Marten"), a trucking company, alleges that defendant PlattForm Advertising, Inc. ("PlattForm") used Marten's name and trademarks without authorization on websites on which PlattForm advertised truck driver jobs. The matter comes before the Court on PlattForm's motion to exclude expert testimony by Marten's experts Ronald Fischer and Richard Follis (Doc. # 125). For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is granted with respect to Mr. Follis's opinions regarding search engine optimization, which testimony shall be excluded at trial. The motion is otherwise denied.

### I.    Background

Marten has designated two expert witnesses to testify in this case at trial. Ronald Fischer is a computer consultant with experience in computer forensics and data

recovery. In his expert report, Mr. Fischer identifies various dates on which Marten's information appeared on four internet websites operated by PlattForm: JustTruckingJobs.com ("JTJ"), FindATruckingJob.com ("FaTJ"), EliteTruckDrivingJobs.com ("Elite"), and TruckDrivingJobFinder.com ("TDJF"). The report also includes screenshots of the sites on those dates. In the case of JTJ and FaTJ, Mr. Fischer used the Internet Archive's Wayback Machine, a searchable website that archives internet sites at various points in time as captured by web crawlers. In the case of Elite and TDJF, the report's screenshots came directly from those sites without use of the Wayback Machine. At the end of his report, Mr. Fischer concludes as follows:

> Based upon the foregoing webpage evidence for the websites in question and their associated dates that they appeared on the internet, I conclude that PLATTFORM used MARTEN's IP [intellectual property] on their websites and failed to remove it even after receiving a cease and desist letter dated September 13, 2013 from MARTEN's attorneys.

Thus, the opinions in Mr. Fischer's report appear limited to his opinions that Marten's information appeared on PlattForm's sites on particular dates.

Richard Follis is a consultant with experience in the transportation industry, including experience recruiting truck drivers. Mr. Follis's report contains opinions relating to the following: turnover of drivers in the trucking industry; costs of hiring drivers; lost revenues for empty trucks; a shortage of drivers in the industry; advertising by carriers for drivers, including online advertising; search engine optimization; and the relationship between a carrier and its advertising agency.

When Marten served its expert disclosures in August 2015, it inadvertently failed

to serve the expert reports in their entirety, and PlattForm received every other page of the two reports. PlattForm declined to depose the experts during the discovery period, and the Court denied PlattForm's request at the pretrial conference to depose Mr. Follis out of time. On March 21, 2016, PlattForm filed the instant motion to exclude, to which it attached the incomplete reports. In its response, filed on April 4, 2016, Marten noted that pages had been inadvertently omitted when the expert reports were served on PlattForm, and it attached the complete reports. Marten subsequently moved for leave to serve the complete reports, and after a telephone hearing, the Court allowed the complete reports to be served, on the conditions that Mr. Follis be made available for a deposition and that Marten produce any documents supporting opinions contained on the omitted pages of Mr. Follis's report.

## II.     Governing Standards

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that district courts are to perform a "gatekeeping" role concerning the admission of expert testimony. *See id.* at 589-93; *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999). The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony

>is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In order to determine that an expert's opinions are admissible, this Court must undertake a two-part analysis: first, the Court must determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render the opinions; and second, the Court must determine whether the witness's opinions are "reliable" under the principles set forth in *Daubert* and *Kumho Tire*. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702 advisory committee notes. The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *See Kumho Tire*, 536 U.S. at 152.

### III.    Opinions by Ronald Fischer

In seeking to exclude the opinions of Mr. Fischer, PlattForm first argues that Mr. Fischer is not sufficiently qualified to render opinions based on use of the Wayback Machine because he is not an expert specifically with respect to website archiving. PlattForm argues that Mr. Fischer, in opining that certain websites referenced Marten in the past as shown by the Wayback Machine, improperly acts as a surrogate for the experts who created the Internet Archive.

4

The Court rejects this challenge. PlattForm relies on *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067 (D. Minn. 2015), but in that case, the court rejected an argument that the expert was not qualified because he had not worked at the Internet Archive to design the Wayback Machine archives or the web crawler that it used. *See id.* at 1083-85. PlattForm notes that the expert in *Khoday* at least had experience creating web archives, but the court in that case did not suggest that such archiving experience was required. *See id.* In this case, Mr. Fischer has experience using tools to recover electronic data, including the use of the Wayback Machine, and the Court finds such experience to be sufficient to withstand a *Daubert* challenge. The Court notes in that regard that an expert is not necessarily required to have invented or to have experience designing the particular tools that he uses in his field. PlattForm is free to explore any limitations in Mr. Fischer's knowledge and expertise regarding the Wayback Machine in its cross-examination at trial.

PlattForm also appears to argue that Mr. Fischer does not really offer expert testimony, in the sense that he has done no more than run a search that any lay person could run. The Court rejects this argument as well. PlattForm has not cited any supporting authority addressing the use of the Wayback Machine by an expert, and in fact, in *Khoday*, the case cited by PlattForm, the court rejected this same argument. *See id.* (citing *U.S. v. Ganier*, 468 F.3d 920, 925-26 (6th Cir. 2006)). This Court similarly concludes that Mr. Fischer offers expertise beyond that of the typical lay juror concerning search techniques, including the use of internet archives, and that his expert

5

testimony would therefore be helpful to a jury.

Finally, the Court rejects PlattForm's argument that Mr. Fischer's proposed testimony improperly serves as a mere vehicle for the introduction of evidence that would be otherwise inadmissible. First, the Rules of Evidence state explicitly that an expert may rely on inadmissible facts if experts in his field would reasonably rely on those kinds of facts in forming their opinions. *See* Fed. R. Evid. 703. Mr. Fischer opines that PlattForm's sites included Marten's information on particular dates, and he relied on search results to support that opinion. Thus, Mr. Fischer's testimony as proposed in his report would go beyond the mere introduction of the screenshots. Assuming that Marten can offer testimony or other evidence at trial that computer experts reasonably rely on such searches, including searches of the Wayback Machine, in their work, the admissibility of Mr. Fischer's testimony does not depend on the admissibility of the screenshots.

Moreover, the Court does not agree with PlattForm that the screenshots are inadmissible as hearsay. Although a website may contain assertions, the Court agrees with Marten that the website itself does not constitute an assertion as required for exclusion as hearsay. *See* Fed. R. Evid. 801 (defining "hearsay" as a "statement" and defining "statement" as an "assertion"); *see also, e.g.*, *Summit Auto Sales, Inc. v. Draco, Inc.*, 2016 WL 706011, at *5 (N.D. Ala. Feb. 23, 2016) (citing *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1155 (C.D. Cal. 2002)) (screenshots are not statements for purposes of hearsay rule). In the cases cited by Plattform, internet

content was excluded as hearsay because it was offered for the truth of the matter asserted on those web pages. In this case, the screenshots would not be offered to prove the truth of the matter asserted—i.e., information about Marten or whether Marten was in fact offering jobs to drivers; rather, the screenshots would be offered to show that PlattForm said *anything* about Marten on its sites. Finally, even if offered for the truth of the matter asserted, statements by PlattForm, the opposing party, on its own websites would not constitute hearsay. *See* Fed. R. Evid. 801(d)(2). Thus, the screenshots on which Mr. Fischer relies are not inadmissible as hearsay.

PlattForm also argued in its motion that the screenshots from the Wayback Machine could not be authenticated under Fed. R. Evid. 901 without the testimony of someone from the Internet Archive. Since the filing of the motion, however, Marten has (with leave of the Court) obtained deposition testimony from a representative of the Internet Archive authenticating certain screenshots, and in its reply brief, PlattForm has withdrawn its foundation and hearsay objections to the documents addressed in that deposition. PlattForm maintains its challenge with respect to testimony about any other screenshots,[1] but as noted above, such testimony by Mr. Fischer is not precluded merely because the underlying screenshots may not be admissible. Any such challenge to the admissibility of other screenshots is premature; in the event that Marten seeks to offer into evidence other screenshots without the necessary foundation under Rule 901,

---

[1] In its motion, PlattForm does not address specifically the screenshots from the Elite and TDJF websites that were not taken from the Wayback Machine.

7

PlattForm may raise a timely objection at trial.

Accordingly, PlattForm's motion to exclude expert testimony from Mr. Fischer is denied.

### IV.     <u>Opinions by Richard Follis</u>

PlattForm challenges two sets of opinions by Mr. Follis from his report. First, PlattForm takes issue with the opinions in a paragraph discussing the "importance of a carrier being able to capture every qualified driver possible" and various issues of concern to drivers and applicants. PlattForm argues that these opinions represent mere speculation without basis. These are the type of opinions, however, that Mr. Follis is qualified to render based on his expertise and long experience in the trucking industry. Thus, the Court rejects PlattForm's challenge to these opinions.

PlattForm also questions the relevance of opinions relating to an industry-wide driver shortage in the absence of evidence relating to Marten's particular needs and circumstances.[2] Any such questions relating to relevance are better addressed at trial, however, and do not provide a basis for exclusion of Mr. Follis's opinions at this stage.

Second, PlattForm challenges Mr. Follis's opinions relating to search engine optimization (SEO). The section of Mr. Follis's report titled "Summary of Opinion" contains the following paragraphs:

---

[2]The Court does not consider similar arguments relating to other opinions raised by PlattForm for the first time in its reply brief.

> Advertising over the past 15 years has transformed dramatically. Newspapers, trucking magazines, and mailers have been replaced by online products. With the advent of the web, portable computer, I phones [*sic*], etc., online recruiting is now and will continue to be the future of recruiting. Products such as pay per click, Craig's list, and Trucking websites are now generating a larger number of viable class A driver applications. Consequently, truckload carriers are constantly looking for a better mousetrap to attract qualified class A drivers. Because of the new technology age this begins with a well thought out web page containing as many key words, pictures, and videos as possible. Key word examples are trucking, truck driver, driving jobs, class A drivers, one word description of routes, (local, dedicated, regional, OTR) etc. The next step is to get your website seen. This is where optimization comes in. Trying to optimize your web site on your own is very costly. However, if you subscribe to a pay per click provider or trucking websites you automatically increase theirs [*sic*] and your optimization.
>
> Search engines look for key words as previously discussed. By subscribing to these trucking websites you increase your optimization due to a process called Algorithm. By being linked to a trucking web page the key words are more frequent due [*sic*] the trucking web page configuration as well as those other carrier web pages all being linked to the trucking web page. The more carriers and key words, the more viable the trucking web page is in the eyes of search engines such as Google and Yahoo. My experience is 10% to 12% of carriers [*sic*] hires come from trucking websites. Depending on frequency of updates and locations used, Craig's list can generate in the neighborhood of 25% of hires.

The section of the report titled "Conclusion" contains the following paragraphs:

> . . . Because Platform [*sic*] Advertising, Inc. placed advertising using Marten Transport, LTD. marks without a signed insertion order, it can only be for the purpose of increasing optimization for findingtruckingjobs.com and justtruckingjobs.com.
>
> Every carrier listed on their websites enhances optimization by increasing the key word menu, pictures, videos, which in turn raises their awareness with search engines such as Yahoo and Google. More awareness and better positioning on search engine pages equals better numbers to attract new clients. Unfortunately, this is done at the expense of carriers who have not authorized placement and are not receiving application [*sic*].

>Carriers on the sites who have given authorization benefit from those application [*sic*] they intended to go to Marten Transport, LTD.

PlattForm argues that Mr. Follis is not qualified to give these SEO opinions and that the opinions are not supported by a reliable basis or methodology. The Court agrees.

Marten has not submitted a declaration or testimony from Mr. Follis (he was not deposed) or any other evidence in support of these opinions. Marten points to Mr. Follis's general experience in advertising for drivers. Such experience would make him qualified to render the opinions from the foregoing excerpts that do not directly relate to SEO. That would include the general use of key words in advertising for drivers, as that practice would fall within his experience.[3] Such general experience in the industry, however, would not necessarily give a person the technical knowledge to understand and render an expert opinion concerning SEO, how it works, and how it could be affected in given circumstances—at least, not in the absence of evidence that the expert did obtain such expertise at some point in his career. Thus, Mr. Follis's experience does not provide the necessary support for his SEO opinions.

In its only other argument in defense of Mr. Follis's SEO opinions, Marten

---

[3]Thus, Mr. Follis's opinions could properly be based on his experience and expertise in the trucking industry with respect to the first seven sentences in the first paragraph excerpted above from the "Summary of Opinion" section (ending with the examples of key words); and the last two sentences of the second paragraph excerpted from that section (stating certain percentages). PlattForm's motion is denied with respect to such opinions, which do not directly require an understanding of SEO. The motion to exclude is granted with respect to opinions contained in the remaining sentences of the excerpted portions of the report.

10

contends that one of the classic hallmarks of a reliable opinion—the ability to be tested—is present here because someone could run tests to check Mr. Follis's opinions about how SEO works in general and how it worked in this case. As set forth in *Daubert*, however, the "key question" in determining whether an expert's opinion is truly based on scientific knowledge, as defined by the Supreme Court, is not whether the opinion can be tested (using some methodology chosen by another expert), but whether the particular *theory or technique* used by the expert as the basis for his opinion can be tested. *See Daubert*, 509 U.S. at 592. Mr. Follis has not identified—in his report or in any declaration—any methodology at all by which he came by his opinions concerning SEO and its application here. Without such a methodology or basis to support his SEO opinions upon challenge by PlattForm, those opinions cannot be deemed sufficiently reliable to be presented to the jury in the guise of expert testimony.[4]

The Court's conclusion in this regard is bolstered by Mr. Follis's description of his assignment in the report. Mr. Follis states there that it was "understood" by him in rendering his opinions that PlattForm acted to increase its websites' SEO. That statement supports the conclusion that Mr. Follis did not reach that opinion on his own, based on his own expertise or some particular methodology.

---

[4]Mr. Follis's SEO opinions include the opinion that because PlattForm used Marten's information on the websites without authorization, it must have been acting to increase the sites' SEO. Without as sufficient basis, such speculation about PlattForm's intent is not a proper subject of expert testimony, and that opinion is excluded for that reason as well.

11

For these reasons, PlattForm's motion to exclude is granted with respect to Mr. Follis's opinions concerning SEO (as defined in note 3 above). The motion is otherwise denied.

IT IS THEREFORE ORDERED BY THE COURT THAT PlattForm's motion to exclude expert testimony by Marten's experts Ronald Fischer and Richard Follis (Doc. # 125) is hereby **granted in part and denied in part**. The motion is granted with respect to Mr. Follis's opinions regarding search engine optimization, which testimony shall be excluded at trial. The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 27th day of April, 2016, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
